McCALEB, Justice.
 

 This is an expropriation suit in which the State, through the Department of Highways, seeks rights-of-way across two parcels of land owned by the defendant for the relocation of U. S. Highway 71 between Dixie and- Gilliam, in Caddo Parish, together with the right to remove dirt from a borrow-pit area on one of the plantations and a servitude of passage between the borrow-pit and the highway right-of-way. The right of expropriation is not contested and there is also no controversy in respect of the value of the right-of-way comprising 1.456 acres off the east end of Lakeland Plantation, one of the two parcels involved, which the judge fixed at the sum of $364. However, the defendant claims in his answer that the value of the permanent servitude over the other parcel of land, Paw Paw Plantation, together with the borrow-pit, the temporary right-of-way thereto and also the consequential damages resulting to the plantation as a whole, amounts to-$61,574.25. A part of this sum includes a. claim of $9,000, allegedly the cost of erecting necessary gates and cattle guards and $14,180, the asserted cost of proposed construction of an underpass so that defendant’s cattle herds may be moved from one part of the plantation to the other without encountering the hazard of crossing a major state highway. These two items have-been eliminated from the controversy by the judgment of the trial court, which provides, that adequate fences and an underpass be constructed by the State at its own expense.
 

 After a hearing on the issue of the value of the rights-of-way and the asserted consequential damages to Paw Paw Plantation,.
 
 *993
 
 the judge awarded a total sum of $5,552.25. Defendant has appealed, requesting that the judgment be increased to $23,170.35. The State has answered the appeal and prays that the award be reduced to $2,644.50.
 

 In order that the nature of the specific claims of the parties may be more readily visualized and understood, we reproduce a map of Paw Paw Plantation, which was offered in evidence by defendant, showing the proposed highway through the property, the borrow-pit and area adjacent thereto and also depicting separately the areas for which special damages are demanded.
 

 Defendant complains first that the compensation of $1,961.25 awarded for the permanent right-of-way,' depicted in yellow on the map as Tract H, or the sum of $150 an acre for the 13.075 acres, is contrary to' law because the judge refused to consider the estimates of two professional real estate appraisers (Mr. Whitten and Mr. Stoer), who valued the land at $200 and $250 per acre respectively.
 

 
 *995
 

 
 *997
 
 The State’s evidence consisted of the testimony of three experienced farmers of the vicinity (Messrs. Fuller, Stroud and Cavett) and one realtor, a Mr. Smith. Each of these witnesses appraised the land at $150 per acre. Besides the two above-mentioned real estate men, defendant produced a bank officiál (Mr. Cowley), who placed an overall value of $221.50 per acre on the land. This witness and Mr. Stoer, one of the realtors, further opined that the portion of the plantation being taken for the right-of-way was the best type of agricultural land, worth from $250 to $350 per acre.
 

 The judge of the trial court made a personal inspection of the plantation and came to the conclusion that the $150 per acre estimate of the State’s witnesses represented the true value. In reaching this conclusion, he observed that he did not place too much credence in the appraisals of the real estate agents because they, “from the nature of their profession, inflate values in order to readily make sales”.
 

 Whereas the judge was vested with discretion to accept the valuation of the State witnesses in preference to the evidence produced by defendant, there was no basis in law for his rejection of the testimony of the defense experts merely because they were . engaged in the real estate business. On the contrary, the general rule pertaining in cases of this type is that “ * * * the opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoints of sincerity and good reasoning”. See Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541 and cases there cited. In the case at bar, it appears that defendant’s experts were sincere in their views and the estimates given by them were not without support— particularly so, since it was agreed by all that the nearby Lakeland Plantation was worth $250 per acre, and notwithstanding that the State’s witnesses declare that that land is of a better grade from an agricultural standpoint.
 

 By applying the above rule, we feel that a valuation of $200 per acre for the right-of-way taken or an award of $2,615 for the 13.075 acres comprising Tract H, will be more in keeping with the evidence adduced in the case.
 

 The judge allowed $129.50, or $50 per acre, for the temporary use of 2.59 acres shown as Tract G on the map. Defendant asserts that this award is insufficient and that he is entitled to $259 in compensation. In reaching his conclusion on this item, the judge stated:
 

 “The testimony shows that this land will be used to haul the dirt from the borrow-pit to the road right-of-way and that the entire time it is so used should not exceed ninety days; that when the work is completed the contractor will be required to remove all travel scars and leave the land in a smooth condition, but will not be re
 
 *999
 
 quired to replant same. Defendant’s land is being used as a stock farm and we are of the opinion that by the time this case is over and the land is returned to the owner it will be late in the spring, and then the owner will have to replant the property. We think that he should be paid $25.00 per acre for the use of the land and $25.00 per acre for replanting same, or a total of $129.-50.”
 

 We believe that this award is proper in view of the very temporary .use and relatively slight damage to this strip.
 

 The judge allowed defendant the full acreage price for the borrow-pit, shown in yellow on the map as Tract F and containing 2.53 acres. It was held that, since the dirt from that area would be removed to a depth of 10 feet, the tract would have no practical value to the defendant (who uses the plantation principally for pasturage and farming) except for the mineral rights.
 

 The State suggests that this award is excessive and should be reduced by 50%, because the value of the temporary servitude can in no event be regarded as equal to the value which would be allowed for full ownership.
 

 The point is not tenable. In the first place, the State’s own witnesses placed the damage for this talcing at 100% of the value of the land. Moreover, it seems manifest that, since the land will no longer be fit for farming or grazing purposes by reason of the large hole which will be left after the dirt is removed, an allowance for anything less than full value would not be adequate compensation. Hence, in view of our opinion that the fair value of the land is $200 per acre, the award for this item will be increased to $506.
 

 In connection with this item, we note that defense counsel, in a supplemental brief, contend that the borrow-pit will create nuisance damage to all of the rest of the land and alternatively assert that, if defendant’s prayer for general damages to the entire land is rejected, the case should be remanded so that testimony can be produced respecting the damages that he will sustain by reason of the excavation operations. Counsel say that defendant was not prepared to make such proof on the trial of the case because it was not until the trial that the State stipulated that the borrow-pit rights were to be restricted to the duration of that particular project.
 

 Forasmuch as defendant is being given the full value of the land used for a borrow-pit, we think that this sufficiently compensates him not only for the value of the dirt taken therefrom in the construction project but also for any and all damages, actual or conjectural, which he may thereafter sustain as the consequence of the excavation in this area.
 

 Defendant demands the sum of $2,-000 as additional compensation for thirty pecan trees situated within the right-of-way and more particularly in two clumps
 
 *1001
 
 •on the north and south banks of Swift’s Bayou. The trial judge stated in his opinion that the trees are mainly native pecans •of very slight value and that, whereas ■there was testimony by some experts for defendant valuing pecan trees as high as -$300 per tree, he felt that an award of $500 for all of the trees was ample.
 

 The State, in answer to the appeal, contends that the judge was in error in placing .a separate value on these trees and that they cannot be appraised independently of the land.
 

 We think that this point is well taken. 'The pecan trees in the instant case were not grown on the land as a special crop by ■defendant; they are native pecans which liave sprung up indiscriminately on different parts of the land. Therefore, their value cannot be regarded as constituting a separate item of damage to defendant and should have been considered by the judge ■only in determining the value of the land on which they were located. See Brittingham v. Board of Com’rs, 167 La. 368, 119 So. 259; Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565; Nichols on “Eminent Domain”, 3rd Ed., Vol. 4, Sec. 13.21 and 29 C.J.S., Eminent Domain, § 173, p. 1042. Clearly, an award of separate compensation for these pecan trees is unauthorized and would be inconsistent with LSA-R.S. 48:218 which provides, inter alia, that for any improvement of the landowner or any crops upon the land that are damaged or destroyed by the location of the highway right-of-way, “ * * * the owner may recover compensation, in addition to the compensation for the property or the right of way, for the actual injury to or destruction of the improvement or crop”.
 

 Defendant also claims special damage of $2,000 for the destruction of the watering pond for his cattle. The judge allowed $500 and the State contends in its answer to the appeal that no separate compensation should be given for this pond because it had not been shown that it increased the potential sale price of the property as a whole and since the portion of the pond to be covered by the highway had already been valued (as part of Tract H) by defendant’s witnesses on the same basis as the pasture land on dry ground.
 

 The record shows that the defendant created this small lake in Swift’s Bayou by erecting two dams, one to the east and the other to the west of the place where the new highway will cross the bayou. As a result of this crossing, the lake or watering pond will be split in two sections.
 

 Although the lake is shown to have some recreational value and is being employed for watering cattle, it is not the only source of such water available to defendant. Mr. Whitten, one of defendant’s experts, estimated its value at at least $1,000 and Mr. Cowley said it was worth at least $1,500, but defendant admits that the cost of replacement is difficult to fix.
 

 
 *1003
 
 Considering all of the circumstances surrounding this item, we cannot say that the trial judge erred in holding that defendant will sustain special damages as a consequence of the highway crossing and in fixing the damage at $500. We therefore concur in his finding.
 

 In addition to the foregoing, defendant maintains that he will suffer damages with respect to certain specific areas of. the plantation which are not actually expropriated hut whose 'situation will be in some manner affected by the new highway. On his map, he has pictured these areas as tracts A, B, C, D and E, colored in blue and green, and claims particular items of damage for each.
 

 Tract A, shown in blue on the map, is south of Dooley’s Bayou'. It is 7.43 acres in area and will be completely severed from the rest of the plantation by the new highway. As a result, defendant professes that he will sustain damages in the sum of $1,-114.50. The evidence exhibits that, due to its isolation, the tract will not be of much value as grazing land; however, its use as farming land will not be diminished to any great extent although defendant contends that the property can no longer be worked with heavy farm machinery.
 

 The judge, after considering the evidence, including testimony adduced by the State to the effect that the presence of the highway will increase the value of this particular acreage for suburban homesite purposes (it is approximately 20 miles from Shreveport) to $500 per acre, concluded that the damages demanded had not been shown by clear and preponderating proof. He therefore rejected recovery.
 

 Industrious counsel for defendant earnestly contend in their lengthy brief that the judge erred in his ruling. However, a review of the evidence leaves us with the distinct impression that the judge correctly resolved that the defendant had not established with certainty the damages claimed. Indeed, the proof regarding the inconvenience of continuing to use this tract for farming, as at present, is not impressive.
 

 Colored in green on the map as Tract B, comprising 21.94 acres, is a long, narrow strip of land between the new highway and Dooley’s Bayou which, it is shown, will be usable only as a pathway for cattle. Due to the present erosion on this part of the land, which will be heightened by the congregation of cattle thereon, defendant will unquestionably sustain special damages by reason of the highway. Defendant claims that this damage will amount to $2,194 but the State maintains that no damages have been proved and that any injury which might have otherwise resulted will be completely obviated by the construction, in conformity with the judgment below, of an underpass, making this particular strip accessible to the cattle grazing on the western portion of the plantation.
 

 
 *1005
 
 The judge concluded that the evidence was sufficient to support a finding that Tract B will be damaged to the extent of 50% of its value. An examination of the evidence pertaining to this item of damages satisfies us that the award is justified. However, in view of our conclusion that the land is worth $200 per acre, instead of $150, the allowance granted below will be increased to $2,194, as prayed for by defendant.
 

 Tract C is a narrow strip, colored in blue on the map, 9§iooths of an acre large. Defendant claims that the creation of this strip by the building of the highway results in special damage of at least 50% of its value. The judge agreed with this contention and awarded defendant the sum of $73.50.
 

 We doubt the validity of this allowance as the evidence is not convincing that the strip is not usable for grazing or that the value of the land has been appreciably affected by the presence of the highway. Hence, the item will be disallowed.
 

 Tracts D and E, shown in blue on the map, are situated on the northern side of Swift’s Bayou and comprise ^iooths and 2.08 acres respectively. Defendant asserts that these tracts, which will be formed by the new highway, will sustain damages at 50% of their value, it being argued that, but for the highway, defendant would have one small tract of approximately
 
 3V±
 
 acres which would .be susceptible of cultivation.
 

 The judge denied this claim and we think that he was correct, because the original tract was already so small and isolated as to be of little value to the plantation as a whole.
 

 Finally, defendant asks for damages in the sum of $11,675.60 for the diminution in value of the entire Paw Paw Plantation by reason of the increased costs of operation caused by its division into two parcels by a major high-speed highway. In rejecting this substantial item, the trial judge said: “We do not think that defendant’s property to the east of Dooley’s Bayou will be diminished in value to any extent by the presence of the proposed highway running through his property for the reason that Dooley’s Bayou now severs said tract from north to south. This bayou is approximately 200 feet wide and 15 to 20 feet deep, and is covered with ‘sawgrass’. There is no crossing of this bayou by the cattle arid the only means of passing from the west fo the east is by means of a bridge across the bayou at about the center of the tract of land. Therefore the proposed highway along the west side of Dooley’s Bayou will have no effect upon the value of the land to the east of the bayou”. And further on in his opinion, with reference to the property on the' west side of the' bayou, the judge said: “We find that due to its irregular shape and the fact that Dooley’s Bayou dismembers it .from the east portion of the property, its value has not been diminished by.reas.on of the location of the road along
 

 
 *1007
 
 the bayou, except as otherwise noted with reference to the particular parcels along the right-of-way”.
 

 These conclusions of the judge are well founded and are substantiated by the proof. In addition, it is to be noted that the specific items of overall damages enumerated by defendant (increased costs of operation, impaired freedom of movement of the cattle and the like) are too remote and speculative to form the basis for an award. From the balance of the testimony it would appear just as likely that the worth of the plantation as a whole would actually be increased as a result of the highway. The only damages which are reasonably certain are those already awarded with respect to the lettered tracts.
 

 The decision in Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, heavily depended upon by counsel as supporting the claim for residuum damages, bears little resemblance to this matter. In that case, the entire land was being used as a sugar plantation and the refinery happened to be nearby, so that the cane from one-half of the plantation would have to be carried across the highway to the transportation facilities in order to be marketed. Here, there has been no such showing of certain damages.
 

 For the foregoing reasons, the judgment appealed from is amended by increasing the amount of the award from $5,552.25 to $6,-308.50 and, as thus amended, it is affirmed.