93 So.2d 672

**LAFAYETTE PARISH THROUGH THE POLICE JURY OF LAFAYETTE PARISH**

v.

**Pierre HERNANDEZ.**

No. 42807.

Feb. 25, 1957.

Landry, Watkins, Cousin & Landry, New Iberia, for defendant-appellant.

Bertrand DeBlanc, Dugas, Bean, Bertrand & Smith, Lafayette, for plaintiff-appellee.

HAWTHORNE, Justice.

This is an expropriation suit instituted by the Police Jury of Lafayette Parish to acquire for a drainage canal a strip of land approximately 400 feet wide extending across the property of the defendant from its northwestern boundary to the Vermilion River on the southeast. The land sought to be expropriated is 20.23 acres out of a tract of about 134 acres owned by the defendant situated on the southern fringe of the City of Lafayette. After trial on the merits there was judgment in favor of the Lafayette Parish Police Jury awarding it full title to the 20.23-acre strip sought to be expropriated upon payment to the landowner, Pierre Hernandez, of $40,460.00 for the land taken, or $2000 per acre, and an additional $12,500 as severance or consequential damages to the defendant's remaining land. From this judgment the defendant Hernandez has appealed to this court.

Appellant first argues that the lower court erred in not dismissing this suit on his exception of prematurity.

After the approval of a bond issue by the qualified electors of the Parish of Lafayette for the purpose of financing a drainage program, representatives of the police jury met with the appellant to discuss the acquisition of the property here expropriated. Following this meeting a written offer to purchase the property for $14,805, together with a check for that amount, was tendered to the appellant by the police jury, which was refused. The amount offered as just compensation was predicated on a report of a committee appointed by the police jury to examine and appraise appellant's property. After appellant refused to accept the offer so made, there were no further negotiations between these parties, and in due course the present suit was instituted.

It is appellant's position that the offer and the efforts of the police jury to acquire this tract of land without suit were not made in good faith, and that its offer

was nothing more than a pretense made to comply with the requirements of the laws governing expropriation. He cites the case of Calcasieu & Southern Ry. Co. v. Witte, 224 La. 1091, 71 So.2d 854, which holds that under Article 2627 of the Civil Code and R.S. 19:2 a bona fide attempt must be made to negotiate with the landowner before an expropriation suit is filed. In the cited case the plaintiff, which was seeking to expropriate the land of the defendant, admitted that there had been no negotiations with the defendant before the filing of that suit, and that no attempt had been made to purchase or secure the right-of-way sought to be expropriated. This is not true in the instant case.

Appellant here says that the offer of the police jury was not a good faith effort to purchase this property because the committee that made the appraisal upon which the offer was predicated was composed of persons who were interested in the drainage project, anxious to cooperate with the police jury, and inexperienced in real estate transactions in the vicinity. Appellant further argues that the police jury had caused his property to be appraised for the same purpose by other parties some two years earlier, and that that appraisal was for a much larger amount.

There is nothing in the record showing that the committee appointed by the police jury acted unfairly or wrongly, or that the police jury selected the personnel of this committee for the purpose of taking some unfair advantage of the appellant. The committee was composed of a lawyer, a city judge, an employee of the police jury, and a farmer, and their characters are unquestioned. Certainly the appellant has not established bad faith to our satisfaction, and consequently we think the trial judge properly overruled the exception of prematurity.

The police jury has not appealed or answered the appeal, and therefore on the merits we have only the question of whether the amounts of the awards should be increased.

█ Appellant urges that the award of $40,460 for the 20.23-acre strip expropriated should be increased to $45,517.50, or, in other words, that the award should be increased from $2000 an acre to $2250 an acre.

Appellant's tract of land is situated on the Vermilion River and Coulee Mine. It is 1.3 miles from Southwestern Louisiana Institute and 1.02 miles from a shopping center containing stores, a post office, and a branch bank. The property may be entered from South College Road. a hard-surfaced road on which city bus service is available, and also from the Abbeville Highway by way of Doucet Road, a gravel road. City water, electricity, gas, and sewerage are available to the entire tract. The land is generally high and well drained and has an artificial lake and many trees. Adjoining it on the east is Bendel Gardens, an exclusive subdi-

vision. On the southeast it is adjoined by the City of Lafayette Sewage Treatment Plant, the buildings of which are brick and masonry. On the southern boundary is the Vermilion River, upon which the property fronts for nearly a half mile. The lands to the west and northwest of the property are undeveloped. On the east is found the Graham Subdivision, which is in the process of development. Somewhat to the north and a little to the east is Minglewood Subdivision. Before the expropriation proceedings appellant's property was used for farming and cattle-grazing.

In Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251, 253, this court said:

"Under the jurisprudence of this court the measure of compensation to be awarded in expropriation proceedings is generally the market value of the property—that is, the price paid in a voluntary sale between a willing seller and purchaser. Furthermore, in determining this market value, sales of similar property in the vicinity are most important. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State, Through Department of Highways v. Hebert, 227 La. 111, 78 So.2d 528; Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687. · It is equally well settled that in suits of this kind the most profitable use to which the land can be put by reason of its location, topography, and adaptability will be considered as bearing upon its market value. Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445, and numerous authorities therein cited."

It is conceded that the most profitable use to which this land could be put by reason of its location, topography, and adaptability is that of a subdivision, and this fact should be considered in determining its market value.

In this case no acts of sale of similar property in the vicinity were actually offered in evidence. However, the expert witnesses, particularly defendant's, gave testimony about such sales without objection. According to the testimony of these experts, we find that sales of similar property in the vicinity of the property here expropriated had been made as follows:

In 1950 a beautiful estate of approximately 176 acres adjoining this tract on the east was sold for about $1700 per acre and at the time of the trial had been developed into Bendel Gardens, an exclusive residential subdivision. In 1952 approximately 20 acres located to the north of this property were sold for $1850 per acre. In 1954 a 10-acre tract adjoining Holden Heights Subdivision northwest of this land was sold for $2500 an acre. This is conceded to be a top price and was paid because the land there purchased adjoined

Holden Heights and was needed to enlarge that subdivision.

Moreover, two of plaintiff's expert witnesses testified that the property here expropriated had a value of $2000 per acre, and one of its experts placed a value on it of from $1750 to $2000 per acre. Of the testimony of these witnesses the most impressive to us is that of Dwight Andrus, who had developed many of the neighborhood subdivisions. Mr. Andrus valued the Hernandez tract at $2000 per acre. Defendant's expert witnesses also valued the property at from $2000 to $2500 per acre, with the exception of one who placed a value on it of $3000 per acre.

The trial judge personally inspected and visited the Hernandez property, and after considering all of the testimony of the witnesses and the evidence adduced he concluded that $2000 per acre represented the actual market value of the property. After considering the sales of similar property in the vicinity of the property here sought to be expropriated, and giving weight to the testimony of the experts in which, after all, there is very little variance as to the value of the land, we do not think that there is any justification for increasing the award made by the trial judge for the property expropriated, and consequently it will be affirmed.

Appellant also seeks an increase in the amount awarded as severance or consequential damages to his remaining property.

The trial judge allowed $12,500 for these damages, and appellant claims a sum in excess of $80,000.

It is well settled that when property is expropriated the owner is entitled to compensation for damages to his remaining land caused by the taking. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260. The measure of such damage is the difference between the value of the property immediately before and its value immediately after the expropriation. Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Texas Pipe Line Co. v. Barbe, supra, and authorities there cited. However, this court has often said that mere consequential injuries to the owner arising from discomfort, disturbance, injury to business, etc., are damnum absque injuria. American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4, Note 2; Harrison v. Louisiana Highway Commission, supra. We have also said that the consequential or severance damages claimed by the landowner must not be anticipated damages, or too remote and speculative. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672; State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881.

The drainage canal to be dug within the area of the 400-foot strip here expropriated

will have an average bottom width of 30 feet and top width of 110 feet, and is to be approximately 30 feet deep. On each side of the canal there will be a 40-foot berm, or cleared space, between the edge of the canal and the waste bank. The waste or spoil which will be deposited on the remaining 105 feet on each side of the canal will form the waste banks. This canal will cross appellant's tract of approximately 134 acres from northwest to southeast, severing it into two parcels of about 32 acres on the east and about 81 acres on the west.

It is appellant's contention, and most of the testimony of his expert witnesses is directed at this point, that his tract of land will be damaged because of the unsightly appearance of the canal, the anticipated untidiness of its banks, the danger that small children will drown in its waters, and the loss of frontage on the Vermilion River; also, because his land will be divided into two tracts, and because the western area of about 81 acres will be cut off from direct access to South College Road and deprived of water, gas, and sewerage facilities.

Appellant, in his efforts to establish the measure of damages by showing the difference in the value of the property immediately before and immediately after the expropriation, called numerous experts. These experts gave opinions of the value of the tract before the expropriation rang-

ing from $2000 to $3000 per acre. All agreed that the property would depreciate in value because of the factors set out above.

As to the 32-acre tract, one of these experts said that the value would depreciate 40 per cent 150 to 200 feet from the canal, with a depreciation of 20 per cent for the rest of this tract. Another was of the opinion that this tract would suffer an over-all reduction in value of 20 per cent. Still another testified that this tract would depreciate 50 per cent of its value within 200 feet of the canal and 25 per cent in the remaining area.

With reference to the 81-acre tract, two of the experts said that the entire tract would suffer an over-all depreciation of 50 per cent. Another said that this tract would depreciate 50 per cent within 200 feet of the canal and 40 per cent in the remaining area.

■ Considering the factors given by these experts which in their opinions would cause the remaining property to depreciate in value, we think that the percentages of valuation used by them are much too high. Conceding that these factors damage the remaining property, we do not think there is any justification shown in the testimony of these experts for the high percentages used by each. Damages such as these must be proven with some degree of certainty, and in the instant case we cannot determine with any degree of certainty,

from the nature of the testimony and evidence adduced here, what these damages are. Moreover, the significance placed by the experts on the various factors causing the depreciation is entirely too great. Some of them may actually exist while others, as the record shows, are somewhat of a speculative nature. Under these circumstances we do not think that appellant has advanced any legal or valid reason why we should increase the award for damages to his remaining property, and it will therefore be affirmed.

For the reasons assigned the judgment appealed from is affirmed.

FOURNET, C. J., absent.