182 So.2d 176 (1966)
GULF STATES UTILITIES COMPANY, Plaintiff and Appellant,
v.
Clemile CORMIER, Defendant and Appellee.
No. 1575.
Court of Appeal of Louisiana, Third Circuit.
January 18, 1966.
Rehearing Denied February 7, 1966.
*177 Bailey & Mouton, by W. C. Hollier, Lafayette, for plaintiff-appellant.
McBride & Brewster, by William H. McBride, Lafayette, for defendant-appellee.
Before FRUGÉ, TATE and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit instituted by Gulf States Utilities Company, a public utility corporation, against Clemile Cormier. Plaintiff seeks to obtain a right-of-way or servitude, 100 feet wide, over and across defendant's property in Lafayette Parish, Louisiana, for the construction and operation of an electric transmission line.
Eleven other actions, almost identical to the instant suit, were instituted about the same time by plaintiff against other landowners, in each of which suits plaintiff seeks the same type of servitude over other lands in that immediate area. These suits bear Nos. 1576 to 1586, inclusive, of the docket of this court 182 So.2d 183 to 203, and all of them have been consolidated with the present suit for trial and appeal. We are rendering a separate judgment in each of these consolidated cases on this date.
The tracts of land affected by all of these consolidated cases are located in Lafayette Parish, about seven or eight miles northwest of the City of Lafayette, near the unincorporated communities of Vatican and Ossun. The location of the right-of-way *178 sought by plaintiff in that area and the approximate location of all of the tracts of land affected by these suits are shown in the following sketch:

*179 The electric transmission lines which plaintiff expects to string along this right-of-way are to be supported by H-frame structures located about 600 feet apart. The two upright poles which constitute a part of each such structure will be 75 feet high and will be spaced 20 feet apart. The crossbars on each structure will be 36 feet long. These supports will be erected along the center of the right-of-way, the two poles on each structure to be located 10 feet on either side of the center line of such right-of-way.
The rights granted to plaintiff include the right to repair and patrol the lines, to replace them, to construct necessary guy wires or braces, to cut and remove trees and brush from the right-of-way, and to have ingress and egress at all times to and from the land included in the servitude. The defendant will not be permitted to erect any structures on the property included in the servitude, but he may fence it in and may use it for his own purposes so long as such use does not interfere with the rights being expropriated by plaintiff.
The instant suit relates only to the tract of land which is owned by Clemile Cormier, the defendant in this action, and which is designated as Parcel 13 on the above sketch. This parcel of land contains 24.85 acres, but for the purposes of this suit it is considered as being two separate but contiguous tracts, one containing 19.85 acres and the other 5 acres. The 19.85-acre tract is rectangular in shape, it is high, well drained land and it is located about one-fourth mile north of a parish gravel road which leads from Ossun to Carencro. It has no frontage on a public road, and access to and from the property is obtained by means of a dirt lane which runs from the gravel road to a point near the southwest corner of that tract. The 5-acre tract is a long, narrow strip of land which adjoins the larger tract at its southeast corner and extends southward to the public gravel road. A tenant farmer resides on the property and uses it for agricultural purposes.
The servitude sought by plaintiff enters the south line of the 19.85-acre tract about midway between the east and west boundaries, and from that point it extends in a northeasterly direction to the north boundary. A total of 1.48 acres is included in this 100-foot right-of-way. There are no buildings or other structures within the servitude area.
The trial judge awarded defendant the sum of $1100.00 for the servitude or right-of-way taken, and the additional sum of $918.50 as severance damages. Plaintiff appealed, contending that the trial court erred in awarding any severance damages at all and that the award for the taking should be reduced to $800.00. Defendant makes no complaint as to the award for the taking, but he has answered the appeal contending that the award of severance damages should be increased, and that there should be an increase in the fees allowed the expert appraisers who testified in behalf of the defendant.
Four expert appraisers testified at the trial, Dan A. Ritchey, Jr., and Allen J. Angers testifying in behalf of plaintiff in all of these consolidated cases, and Lloyd Smith and Chester L. Martin testifying for defendants in all such cases. All four of these witnesses are clearly qualified by training and experience to value and appraise property, and the trial court, correctly and without objection, recognized them as expert appraisers. Each used the market data approach in determining the market value of each item of property involved in these consolidated cases, and each testified as to the other sales which he considered to be comparable and which he used in arriving at his conclusions as to value and severance damages.
Both of the appraisers called by plaintiff felt that the highest and best use of the 19.85-acre tract involved in this particular *180 suit was for "agricultural" purposes. The appraisers called by defendant felt that the highest and best use of such property was for "rural homesites." The trial judge, accepting the opinions expressed by defendant's experts, concluded that the property was best suited for use as "rural homesites."
Plaintiff contends that the trial court erred in reaching that conclusion, basing that argument largely on the fact that the property is without road frontage and that it has always been used for agricultural purposes. We agree that the purpose for which the property has been used prior to the time of the taking may be a factor to be considered in determining what is its highest and best use, but it is not the determining factor. It frequently occurs that property has not been and is not being used for the purpose for which it would have the greatest value. In State of Louisiana, through Department of Highways v. Williams, La.App. 2 Cir., 170 So.2d 152, for instance, at least a part of the property which theretofore had been used for farming purposes was determined to be best suited for use as homesites. And in Texas Gas Transmission Corp. v. Broussard, 234 La. 751, 101 So.2d 657, it was determined that the highest and best use of the property involved there was for small acreage homesites and campsites, although it previously had been used solely for farming and grazing purposes.
The property involved in the instant suit is located within one-fourth of a mile from the center of the unincorporated village of Ossun. This is a very small community, but defendant's experts testified that it is growing, that subdivisions are being created up and down the highway in that area, and that there is a demand for homesites in and near these small villages. Although the 19.85-acre tract has no frontage on a public road, defendant's 5-acre contiguous tract does have public road frontage, and thus defendant has access to the public road from the larger tract. But even if this 5-acre parcel should not be used in providing access to and from the 19.85-acre tract, some of the appraisers indicated that the existing dirt road, with some improvement, would adequately serve the larger area if it were divided into homesites. A review of all of the facts convinces us, as it did the trial judge, that the highest and best use of the property at the time of the taking was for rural homesites.
Ritchey, one of the appraisers called by plaintiff, valued defendant's property at $683.00 per acre, and, considering the servitude to be worth 80 per cent of the fee value, he concluded that the rights being expropriated had a market value of about $800.00. Angers, also called by plaintiff, felt that the property had a value of $500.00 per acre, that the servitude should be valued at two-thirds of that amount, and that the 1.48-acre servitude thus had a value of $500.00. Smith and Martin, the appraisers called by defendant, both testified that in their opinion the 19.85-acre tract had a fee value of $1,064.00 per acre, that the servitude should be valued at 75 per cent of that figure, and that the value of the 1.48-acre servitude thus is $1117.20.
The trial court concluded that the 19.85-acre tract had a value of $1000.00 per acre, and apparently feeling that the servitude should be valued at 70 or 75 per cent of the fee value, he awarded defendant the sum of $1100.00 for the rights taken by plaintiff.
Our Supreme Court has held that the compensation to be awarded in expropriation suits is the market value of the property taken, that is, the price which would be agreed upon between a willing and informed buyer and a willing and informed seller, under usual and ordinary circumstances. State, Through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6; State, Through Dept. of Highways v. Havard, 239 La. 133, 118 So.2d 131; and Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541.
*181 The term "market value" also may be defined as the highest price, estimated in terms of money, which the land will bring if exposed for sale on the open market, with a reasonable time allowed to find a purchaser buying with knowledge of all the uses and purposes to which it is best adapted and for which it is capable of being used.
Plaintiff complains that the opinions as to value expressed by defendant's appraisers are unrealistic, because in arriving at these conclusions they considered prior sales which are not comparable. Plaintiff maintains that its appraisers based their opinions on sales which were of comparable tracts of land and which give a more accurate and reliable indication as to the value of such property. Each of the experts who were called testified at length as to the sales which they considered to be comparable and upon which they based their opinions as to value. In each instance they correlated the prior sale to the property involved here and gave their reasons for accepting, rejecting or adjusting each such sale.
The opinion of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoints of sincerity and good reasoning. Housing Authority of New Orleans v. Boudwine, supra; State Through Dept. of Highways v. Dodge, La. App. 3 Cir., 168 So.2d 430.
We have examined all of the sales which the appraisers considered to be comparable and have carefully reviewed the testimony of each such appraiser as to those prior sales. There appears to be merit to the reasons assigned by all of these appraisers as to why they accepted some sales and rejected other, and we think the opinions expressed by these experts are well grounded from the standpoints of sincerity and good reasoning. No useful purpose would be served by discussing each of these comparable sales. Our conclusion, after reviewing all of the evidence, is that the prior sales relied on by all of the experts who testfied are comparable and do tend to support the opinions expressed by them. The trial judge felt that the comparable sales considered by defendant's appraisers are more applicable and more realistic than those used by plaintiff's appraisers, and we are unable to say that the trial judge erred in arriving at that conclusion.
Plaintiff also contends that the trial court erred in using the "average" per acre value of all of defendant's property in determining the amount which should be awarded for the servitude. It is argued that all of defendant's property does not have the same value per acre, that the portion of said land which is located near the dwelling has a higher value than that included in the servitude, and that the property directly affected by the taking thus has a lower acreage value than the "average" used by the trial judge. We find no merit to this argument. The defendant's experts appraised the 19.85-acre tract separately from the remaining portion of defendant's property because they felt that there was a difference in the per acre value of these two tracts. They concluded that the 19.85-acre tract had a value of $1064.00 per acre, while the contiguous 5-acre tract had a value of about $1350.00 per acre, due to its frontage on a public road. In arriving at a decision as to the value of the part taken, these appraisers used only the lower per acreage value. They did not take the "average" value of all of defendant's property, as contended by plaintiff. The trial judge also based his conclusions on the value of the 19.85-acre tract, and he did not include the higher value of the additional 5-acre tract in determining the average per acre value of the part taken. We cannot agree with plaintiff that the land located near the existing dwelling has a higher per acre value for rural homesites than does the part which is included within the servitude. In our opinion, the evidence supports the conclusion reached by the trial judge that *182 the 19.85-acre tract had a value of $1000.00 per acre, and that defendant is entitled to an award of $1100.00 for the rights taken.
Plaintiff further contends that the trial court erred in awarding severance damages to the defendant. Defendant argues that the award for severance damages should be increased. The appraisers who testified in behalf of plaintiff are of the opinion that defendant's remaining property was not damaged as a result of the taking, while the experts called by defendant testified that the remaining portion of the 19.85-acre tract would be diminished in value by 25 per cent.
The trial court concluded that the construction of an electric transmission line along this right-of way would have the effect of diminishing the value of defendant's remaining property. He found, however, there would be a 25 per cent diminution in value only as to the "plots situated adjacent to or in close proximity to the right-of-way," and that there would be less diminution in value as to properties located at greater distances from the right-of-way. His conclusion was that the remaining portion of defendant's 19.85-acre tract would be diminished in value by 5 per cent after the taking, and he thus awarded defendant the sum of $918.50 as severance damages.
It is well settled that when property is expropriated the owner is entitled to compensation for damages to his remaining land caused by the taking. The measure of such severance damage is the difference between the value of the remaining property immediately before and its value immediately after the expropriation. Parish of Lafayette, etc. v. Hernandez, 232 La. 1, 93 So.2d 672; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260; Texas Gas Transmission Corp. v. Broussard, La.App. 3 Cir., 177 So.2d 145; and State, Dept. of Highways v. Leger, La.App. 3 Cir., 170 So.2d 399. Consequential damages arising from discomfort, disturbance, worry and injury to business are not per se compensable in a proceeding of this type, unless it is shown that there has been a diminution in the market value of the property which remains after the taking; nor is it proper to award severance damages because of sentiment or aesthetic considerations. Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425; City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349; Central Louisiana Electric Co., Inc. v. Mire, La.App. 1 Cir., 140 So.2d 467; and Central Louisiana Electric Co., Inc. v. Harang, La. App. 1 Cir., 131 So.2d 398.
The defendants bear the burden of showing that the market value of their remaining property will be adversely affected by the erection of the proposed electric transmission line. See Texas Pipe Line Co. v. Barbe, supra; Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App. 1 Cir., 131 So.2d 369.
We cannot agree with plaintiff that the testimony of defendant's experts is in the nature of uncorroborated opinion testimony which is patently insufficient to support an award of severance damages. Lloyd Smith, one of defendant's appraisers, cited a number of sales and re-sales of property located in close proximity to an electric transmission line. These transactions showed a profit at the subsequent sale, but the trial judge correctly observed that "the degree of profit was less than those properties not affected by the line but in the same proximity." Although plaintiff argues strongly that the sales referred to by this expert do not support the conclusion at which he arrived, we agree with the trial judge that they do, and we find no error in the conclusion reached by the trial court that the remaining portion of defendant's property was diminished in value by the proposed construction of this transmission line.
The trial judge found that in the instant suit defendant would sustain severance *183 damages of 5 per cent of the fee value of the remaining portion of the 19.85-acre tract, but that there would be no severance damages to the additional 5-acre tract owned by defendant because of its distance from the right-of-way. We find no error in these determinations, and we have concluded that the award of $918.50 made by the trial court as severance damages should be affirmed.
The trial of these consolidated cases lasted five days. The trial court allowed each of the two experts called by defendant the sum of $250.00 for testifying at this trial, and the additional sum of $550.00 for preparing for the trial. Defendant contends that this award is inadequate, that the fee of Mr. Smith should be increased to $1300.00, and that the fee to Mr. Martin should be increased to $1200.00.
We agree with defendant that in fixing expert witness fees it is proper to take into consideration the time the expert is on the witness stand, the time required for him to travel to and from the courtroom, and the time he is required to be away from his regular duties to stand by near the courtroom while waiting to be called. See Cormier v. Traders & General Insurance Co., La.App. 3 Cir., 159 So.2d 746. We have considered these factors, however, and have concluded that the awards made by the trial judge are adequate. See State, Through Dept. of Highways v. Riley, La. App. 3 Cir., 143 So.2d 396 (cert. denied).
For the reasons herein set out, the judgment appealed from in the instant suit is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.