PRICE, Judge.
Pursuant to the provisions of LSA-R.S. 48:441 et seq., the State of Louisiana, through the Department of Highways, expropriated 34.504 acres of land in full ownership, and a construction servitude of 1.-475 acres, from a 719 acre tract belonging *63 to defendant, Dudley Pillow, Sr., situated in Madison Parish, Louisiana. The expropriation was in connection with the construction of a segment of Interstate 20 between Tallulah and Vicksburg and includes the necessary area for a cloverleaf highway exchange on the west side of defendant’s property and a weighing station on the east side thereof.
The defendant’s property is rectangular in shape and forms its depth in a north and south direction. It is located 17 miles east of Tallulah and 3 miles west of Vicksburg in a peninsula formed by the Mississippi River. U. S. Highway 80 and the Illinois Central Railroad right-of-way, running east and west, bisect the property just north of the center line. The entire property was being utilized by defendant for a highly profitable farming operation at the time of the taking.
The area expropriated is a strip of land running east and west transversing the portion of defendant’s property lying south of U. S. Highway 80. Thus, after the taking defendant’s farm was divided into three segments: 336.45 acres lying north of U. S. Highway 80, which was not physically affected by the expropriation; a 65.-916 acre tract lying between U. S. Highway 80 on the north and the Department of Highway’s property taken for Interstate 20 on the south; and the remaining 316.-627 acres situated south of the Interstate 20 route.
In compliance with the expropriation statute, the Department of Highways deposited the sum of $25,320 as the estimated just compensation due defendant for the property taken. Although this sum was withdrawn from the registry of the court by defendant, thereafter plaintiff amended its petition to revise the estimate of just compensation to the sum of $21,215, alleging it had mistakenly included the value of a structure in its appraisal which was not on the property taken. This estimate of just compensation, therefore, is based on appraisals valuing the land taken at $600 per acre with an additional $185 included for the value of the temporary construction servitude for two years on the 1.475 acre tract. No severance damages were recognized in this appraisal.
Defendant answered plaintiff’s petition, asking that the amount of just compensation due him be increased to a total sum of $58,448, contending the fair market value of the land taken should be fixed at $800 per acre, and that severance damages have resulted to the two remainders lying south of U. S. Highway 80, amounting to $200 per acre to the 65.916 acre tract and $50 per acre to the 316.627 acre parcel.
After trial on the merits, the trial court awarded judgment in favor of defendant raising the amount of just compensation to the total sum of $57,414.55. In written reasons for judgment, the court found the evidence to substantiate defendant’s claim that the land taken had a fair market value of $800 per acre, and that severance damages had accrued to the remainder of defendant’s property lying south of U. S. Highway 80 in the amount as claimed by defendant.
In his brief to this court in support of the Department of Highway’s appeal from the judgment of the trial court, counsel contends the opinions of the expert witnesses submitted by defendant do not support an award of $800 per acre for the value of the land taken, and that no severance damages should have been awarded because special benefits have accrued to the remaining property of defendants as a result of the location of the major interchange which more than offset any loss in value otherwise caused by the taking.
We find no error in the trial judge according more weight to the opinions of the two expert real estate appraisers appearing on behalf of defendant than to the testimony of plaintiff’s appraisers. Their testimony reveals they were well acquainted with farm property sales in this area and used methods and techniques which *64 have been consistently approved by the jurisprudence of this State.
William B. Williams and Malcolm Sev-ier made the appraisals for defendant independently of each other and each concluded the subject property had a fair market value at the time of taking of $800 per acre. Both were of the opinion its highest and best use was as an integral part of a farming unit as presently being used.
. Williams appraised the property by use of the market data approach and the income approach. Sevier used only the market data method. The comparable sales of farm property relied on by these witnesses reflected a maximum per acre consideration of $600 (sale from R. T. and William Yerger to W. S. Patrick of 484.68 acres one mile east of Tallulah at $600 per acre in 1967).
Williams and Sevier considered the subject property to have a greater value than any sale evaluated by them in their search for market data because of the following advantages possessed by the Pillow land:
The soil on the entire property is a sandy loam, as it is bound on two sides by the Mississippi River. It is described as being unusual for a tract to possess such a concentration of this highly productive quality of soil. The drainage and crop row pattern was effectually planned to utilize the most efficient farming equipment. The Government cotton allowable was 365 acres, which is a far greater percentage than that possessed by any of the compara-bles used by either defendant or plaintiffs experts. The crop yield on subject property consistently exceeds that of any other farms in this area.
Williams was also of the opinion the closeness of the subject property to the City of Vicksburg increased its market value as it has a future potential to be divided into small ranchette type tracts for home-sites.
After giving due consideration to these various factors defendant’s experts were of the opinion defendant’s property had a value $200 per acre in excess of the sale from Rufus Yerger, et al. to Patrick, which was the sale they found most comparable to the property under consideration.
Both Wayne Medley and Dean Carter, appraisers used by the plaintiff, agreed in their testimony that the subject property is exceptional and possesses the most desirable characteristics for agriculture. Also, that it has been properly developed for a highly productive farming unit in the most efficient manner. Yet neither of them accorded it any greater value than the several sales of farms relied on as comparables not possessing the same attributes of the subject property. Nor did they indicate any consideration was given to the effect the substantial cotton allotment and superi- or yield of this property might have in adjusting its value in relation to sales of other farm properties relied on by them as comparables.
We conclude the defendant’s appraisers have displayed a total familiarity with appraisals of farm properties in this general area and have given logical and sound reasons for their conclusions on the per acre value of the land taken. The trial judge saw fit to accept their opinions, and where we can find no manifest error, we should not disturb the finding of fact of the trial judge. State, Through Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
 In discussing the question of severance damages, it is necessary to consider the two tracts which defendant contends were affected separately.
We shall first consider the 65.916 acres lying south of U. S. Highway 80 and north *65 of the route of Interstate 20. This tract is best described by defendant’s counsel as being “banana” shaped with its length running east and west and a very shallow depth in a north to south direction. Prior to the taking, the entire area of defendant’s property was rectangular in shape, permitting very lengthy crop rows in a north to south direction which is conducive to the most economical method of cultivation. The evidence shows most of the equipment owned by defendant is designed to work eight rows. Because of the limitation in shape and size of the tract following the expropriation, Williams and Sevier were of the opinion this size and type of equipment can no longer be used on this tract and that it has substantially affected the market value of this tract. Only as a part of a farm unit capable of being cultivated by the most modern equipment would the property have the same value attributed to it prior to the taking. Medley and Carter, on the other hand, found no severance damages had accrued as they were of the opinion it would bring the same market price after the taking, particularly since it would abut an interchange which they considered would enhance the value of a portion of the property sufficiently to offset any lessening of its value for agricultural purposes.
The other tract, which is also the subject of defendant’s claim for severance damages, is the 316.627 acre remainder lying south of the route of Interstate 20. Because of the barrier created by the Interstate Highway making direct access impossible from the part of defendant’s farm on which the headquarters is located, Williams and Sevier each were of the opinion this acreage had suffered a loss in market value of $50 per acre. The record reflects all of the storage facilities, shops, equipment storage sheds, fuel tanks, etc., were located on that portion of the farm north of U. S. Highway 80. The testimony also shows many problems will be encountered in transporting machinery, water and supplies from the headquarters area to this remainder. Although appellant argues these are merely inconveniences which are non-compensable under the jurisprudence, we do not agree. We construe the testimony as establishing these factors to decrease the market value of this land from that which it formerly had as a part of the overall farming unit and defendant is entitled to be recompensed this loss in value unless there are special benefits accruing to the property as a result of the public improvement which would offset this loss.
This matter was tried and decided in the district court prior to the recent decision of the Supreme Court in the case of State, Through Department of Highways v. McPherson, supra, which we consider has dispelled the appellant’s claim that special benefits will enure to the two remainders of defendant’s property.
In the McPherson case the court discussed this issue as follows:
“As the recitation of facts set forth, the Department’s experts were generally of the opinion that when the highway was completed, and when traffic began to flow, McPherson’s property at the interchange would benefit by a substantial enhancement in value. McPherson’s experts disagreed. They were of the opinion that there was not then and there would be no enhanced value in the future of the interchange property due to the highway construction under progress. None of the enhanced value the Department’s experts referred to was yet a reality at the time of the trial.
“Since this claim of the Department has to do with mitigation of the severance damage claimed and established by McPherson, the condemning authority has the burden of proving the special benefits as an offset against severance *66 damage otherwise allowable. City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 (1959). In this proof it is the special benefit which exists at the time of the trial which is pertinent. La.R.S. 48:453. That is to say, speculative benefits can no more be considered than can speculative damages. Nichols, The Law of Eminent Domain, Sec. 8.6203 (1965).
“Thus, no enhancement in value to the land surrounding the interchange having been shown as of the date of the trial, the speculation that an increase in value is forthcoming cannot be considered in mitigation of damages to the remainder. Nichols, ibid. Sec. 8.6201. Such a rule is well-founded. It would be improper to make McPherson pay now, by set off, for a benefit he has not received and which is merely speculative. Many circumstances could occur before the highway is completed which would prevent the predicted enhancement in value. Conceivably, the highway may not be completed at all. So the law wisely requires that the values be determined as of the date of trial.”
The condemning authority in the instant case has not shown there has been any enhancement of the value of defendant’s property adjacent to the interchange as of the date of the trial. All testimony of the plaintiff’s experts predicting an increase in value because of this factor relates to a future date after completion of the construction project. This has been declared too speculative by the Supreme Court in the McPherson case; therefore, the trial judge was correct in rejecting plaintiff’s claim that special benefits had accrued to the remainders to offset severance damages. The trial court’s finding of the amount of damage suffered by defendant for a loss of market value in the two tracts involved is in accord with the evidence and should not be disturbed.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.