• O’NIELL, Chief Justice.
 

 This is a' suit for the value of a quantity of timber which the defendant cut and removéd from the plaintiff’s land. Hé claimed, first, $3,888.64, as the value of the lumber' into which ' the1 defendant' manufactured ' the ’ timber.' In the alternative, .plaintiff claimed $2,063.56, as the value of-the lumber less the cost of manufacturing it. And, again in the alternative, he claimed $602.33, as the stumpage value of the timber, — said to be 150,584 feet worth $4 per M. feet. The judge gave judgment for' the plaintiff for $262.46, being the stumpage value of 87,488 feet of timber, at $3 per M. feet. Both parties are appealing from the decision.
 

 The defendant, answering the suit, denied that the plaintiff owned the land, and averred that .one O. P. Gotman, Jr., from whom the plaintiff bought the standing timber on November 9, 1906, was the owner of the land. O. P. Gotman, Jr., bought the land from O. P. Gotman, Sr., on December 6, 1906. Gotman, Sr., resided on a part of the land many years ago and leased another part of it to the operator of a sawmill, until some time soon after the year 1900; The Gotmans then moved to another parish, and neither of them ever afterwards had possession of the land, for a period exceeding thirty years before this suit was filed. The buildings on the land were destroyed by fire soon after • the Gotmans moved away. Meanwhile, that is, on November 2, 1925, a man named G. F. Shaw sold the land to Columbus Monette, and he in turn sold it to C. H. Culpepper, the plaintiff in this suit, on October 3, 1929. There is no record of a title in Shaw. But the plaintiff shows a valid title by the prescription often years. He bought' the property in good faith, from one who held a recorded title, and he resided .on a part of the land for a period exceeding ten years, holding
 
 *902
 
 a deed describing the whole tract. The defendant contends that the Gotmans retained civil possession of the property during all of these years, under the provisions of article 3442, and of articles 3501 and 3502, of the Civil Code. According to article 3442, if a person has once had actual or physical possession of property and has ceased to have such possession, his mere intention of possessing may suffice to preserve his right of possession. But this is qualified by the declaration in article 3444, that the so-called civil possession of one who once had actual or physical possession is lost if some one else is allowed to hold actual adverse possession, or if the former possessor “has failed to exercise an actual possession for ten years.” In article 3501, having reference to the prescription of ten years acquirendi causa, it is declared that, if the possession necessary for this prescription has commenced with corporal possession of the property, and “if it has not been interrupted”, the possession may be preserved by public signs announcing the former possessor’s intention to preserve his possession, such as, for example, the keeping up of roads and levees, the payment of taxes, et cetera. And in article 3502 it is said that one may even retain civil possession of an estate by the fact that there remain on it vestiges of works erected by him, such as, for example, the ruins of a house. Such evidences of an intention of retaining civil possession serve the purpose of retaining such possession “if it has not been interrupted”, as declared in article 3501 of the Code. That means that one who has once had actual possession of an estate, and has ceased to have such possession, cannot retain civil possession, such as may aid him in acquiring title by prescription, merely by leaving outward signs of an intention, to possess, if he-suffers an adverse claimant to hold actual or physical possession as owner of the estate. Our conclusion, therefore, is that the judge was right in deciding that the plaintiff had a valid title to the land from which the defendant severed and removed the timber.
 

 The judgment appealed from is correct also in so far as it maintains that the defendant acted in good faith in buying the timber from O. P. Gotman, Jr., who held a recorded title to the land. In support of the allegation that the defendant did not act in good faith when he bought the timber from Gotman, the plaintiff and his wife and son- testified on the trial of the case that an agent of the defendant offered to buy the timber from the plaintiff before buying it from Gotman. But all of the testimony on that subject leaves no doubt that the agent for the defendant had reference to another tract of land belonging to the plaintiff.' In fact there is some doubt whether the defendant bought the timber from Gotman before or after the agent for the defendant offered to buy from the plaintiff the timber - on the other tract of land. The' judge was right in holding the defendant liable only for the stump'age value of the standing timber. The‘quantity of timber, for the value of which the court gave judgment,’87,488
 
 *904
 
 feet, is the result of a careful estimate made by expert timber estimators, and we accept the figures as being correct. The value for which the court gave judgment, however, $3 per thousand feet, is below the average valuation given by the expert witnesses on the trial of the case. We find that their average valuation was between $3.50 and $4 per thousand feet; but, inasmuch as three of the witnesses for the defendant on this subject gave valuation as high as $4 per thousand feet, we have concluded that the plaintiff is entitled to that sum; which means that the amount of the judgment should be increased to $349.95.
 

 The plaintiff claims also two items of damages, one item being' for $560 and the other for $400. The claim for $560 is for damage alleged to have been done by impairing the value of the remaining timber on the tract of 80 acres, at the rate of $7 per acre; and the claim for $400 is for 400 cords of stove wood, which the plaintiff alleges might have been made out of the tree tops that were left on the land. The judge of the district court found that neither of these claims for damages was supported by proof, and we concur in his finding.
 

 Decree
 

 The amount of the judgment appealed from is increased to three hundred and forty-nine dollars and ninety-five cents ($349.95), with legal interest thereon from the date of judicial' demand, July 12, 1937; and as thus amended the judgment is affirmed at the cost of the defendant.