148 So.2d 111 (1962)
COASTAL TRANSMISSION CORPORATION, Plaintiff-Appellant,
v.
Lenore Savoy LEJEUNE, Defendant-Appellee.
No. 686.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1962.
Bruner, Mayeux & Landry, by J. W. Landry, Crowley, for plaintiff-appellant.
Wesley H. Clanton, Eunice, for defendant-appellee.
Before TATE, FRUGÉ, and SAVOY, JJ.
TATE, Judge.
This is a suit to expropriate a right-of-way servitude for a high-pressure gas pipeline. The plaintiff pipeline company appeals, praying for a reduction of the amount awarded to the defendant landowner. (We *112 have previously overruled a motion to dismiss this appeal. 144 So.2d 759, September 24, 1962.)
This expropriation suit differs from most in that the plaintiff corporation had already constructed its pipeline across the defendant's land before it sought by these proceedings to acquire the legal right to do so.
The trial court awarded the defendant-landowner a total of $2,708.69. This included an award (1) for the value of the servitude taken ($863.63), (2) for severance damages to the remainder of the landowner's tract ($716.82), and (3) for the value of the timber destroyed ($1,128.24).
1. Value of Servitude.
The pipeline crosses near the southern boundary of a fifteen-acre tract owned by the defendant, just south of the city limits of Eunice, Louisiana. This is in an area containing residences and business establishments. The tract is bounded on its west by a hard-surfaced highway. A railroad right-of-way runs through the center of the tract and divides it into two lots. a 7.33 acre lot fronting on the highway, and a wooded 7.87 lot across the tracks.
The trial court held that the defendant's tract had a valuation of $1,000 per acre. Compensation at this valuation was therefore awarded for the approximate ninetenths of an acre taken for the pipeline servitude, which was approximately 1300 feet in length and some ten to thirty feet in width, running near the southern boundary of the defendant's land.
The appellant expropriating company questions this valuation. It contends that the front seven acres on the highway should have been valued at $800 per acre, based upon an allegedly comparable sale of nearby land, and it further contends that the rear eight acres, across the railroad track, should have been valued at only $200-$300 per acre.
The appellant produced no comparable sales or other strongly probative evidence to prove that the rear lot should be valued at so greatly reduced a valuation compared to the front lot. The allegedly comparable sale at about $800.00 per acre upon which the appellant relies, is shown to have been concerned with a tract less valuable than the present because of a coulee down its middle.
The trial court based its valuation upon the recent comparable sale of an entire thirty-eight acre tract just across the highway from the defendant's tract at a price of $1,000 per acre, as well as upon two other comparable sales in the vicinity at $1,000 per acre.
Despite counsel's able argument, we find no error in the trial court's valuation of the entire tract, both front and rear, as worth an average of $1,000 per acre.
2. Severance Damages.
The trial court based its award of $716.82 severance damages caused by the taking to the remainder of the defendant's tract upon an estimated loss of five per cent of its total value by reason of the additional pipeline constructed thereupon by the plaintiff utility.
Plaintiff's able counsel questions the award of any severance damages as unsupported by the evidence. Also relied upon to support such a contention is the circumstance that the defendant landowner had several years earlier granted a pipeline right-of-way across her land approximately 100 feet north of the present pipeline.
The trial court computed the severance damages based upon a loss of five per cent in the entire value of the rest of the tract.
In Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260, 270, such a method of computing severance damages was not allowed under the facts of that case. Subsequent to this decision, however, our Supreme Court denied writs of certiorari in an instance when this method of computing *113 severance damages were used. Tennessee Gas Transmission Co. v. Primeaux, La.App. 1 Cir., 100 So.2d 917. See also Interstate Oil Pipe Line Co. v. Friedman, La.App. 3 Cir., 137 So.2d 700.
However, in the cited Primeaux and Friedman cases, there was expert testimony that such was a proper method of arriving at severance damages. There is no such testimony in the present case which can serve as a foundation for using this method of computing severance damages. See Texas Gas Transmission Corp. v. Fuselier, La.App. 3 Cir., 133 So.2d 828.
We do find, nevertheless, that the testimony of an expert realtor testifying for the plaintiff furnishes a proper basis for the award of severance damages. In addition to the land taken for the servitude, this witness felt that the value of the whole property had sustained a loss in severance value equal to one-third of an acre in the front lot and to one-half of an acre in the rear lot. Tr. 63-64.
By this, we conceive that this expert felt that most of the remainder of the tract not taken by the expropriation would suffer virtually no loss in value, at least in those portions some distance from the right-of-way taken. However, he felt that insofar as the land next to the pipeline right-of-way, there would be some loss in value for sale for subdivision and commercial purposes almost a complete loss of the value of the land immediately adjacent to the pipeline, and a lessening loss of value (until none) the greater the land's distance from the pipeline. As stated, this expert estimated a net loss in the front tract to the value of one-third acre, and in the rear-lot to the value of one-half an acre.
This is the net value of the additional severance damage caused by the new-pipeline to the land nearest it. This does not therefore, of course, include whatever dimmution in value the land nearest the old pipeline had already suffered by reason of the latter's construction several years previously.
The appropriateness of this approach under the evidence in this record is to some extent illustrated by the testimony of the other expert realtor to the effect that there would be depreciation in the value of the entire lots across part of which the pipeline passed. Further support for the use of this method to arrive at severance damages in this case, is furnished by the testimony of the defendant's contractor witness that the building of the new pipeline destroyed the value of all of the land between it and the old pipeline, most of which could previously have been laid out in saleable 85' × 150' lots.
This latter witness had also pointed out that fairly recently there had been an explosion-fire of a high pressure gas pipeline within two miles of the present property, which resulted in the death of a man and the destruction of some property. To purchasers familiar with this danger, however theoretically slight it might be, the presence of a high pressure gas pipeline such as the present would obviously destroy or greatly depress the value of the immediately adjacent land for residential or commercial purposes. Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260, 270.
Under the facts reflected by this record, we will accept the testimony of the first realtor as furnishing the correct method to determine the extent of the severance damage caused to the remainder of the landowner's tract by the present taking. See Trunkline Gas Co. v. Cassidy, La.App. 3 Cir., 138 So.2d 424. Since we have already affirmed the trial court's finding that the entire tract was worth $1,000 per acre, under the testimony of this expert we arrive at a valuation of severance damages of $333.33 (one-third acre, net) for the front tract and of $500.00 (one-half acre, net) for the rear tract.
Since the total thus arrived at exceeds the award by the trial court, and since no *114 answer to the appeal was filed, we will affirm the trial court's award for this item.
3. Award for Trees Destroyed.
The trial court awarded $1,128.64 for the value of the landowner's timber destroyed by the plaintiff company in the construction of its pipeline. The plaintiff pipeline company in the construction of its pipeline, had trespassed onto the plaintiff's tract without legal title to do so and had cleared about one and one-half acres in a strip approaching one hundred feet wide over the rear tract, which was densely wooded with virgin timber.
The trial court made this award on the basis of the manufactured value of the timber destroyed by the defendant's trespass. The plaintiff-appellant primarily contends that the trial court erred in holding that its trespass was in bad faith and awarding damages on this basis; able counsel contends that what was involved was at most a good faith trespass, as a result of which the landowner is entitled only to stumpage value for the timber destroyed.
The measure of damages for the unlawful cutting of timber is well settled by our jurisprudence. As summarized by Justice McCaleb in Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847:
(1) If the trespass has been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the manufactured value of the timber, without deduction for costs and expenses of manufacture. Kennedy v. Perry Timber Co., cited above; Dendinger, Inc. in Liquidation v. Thompson & Thompson F. Prod., La.App. 1 Cir., 94 So.2d 62. (This was the basis on which the present trial court made its award.)
(2) In cases where the trespasser believes himself to be owner, but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith; in that case, the expenses of manufacture are deducted from the award to the landowner of the manufactured value of the timber. Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211; Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197.
(3) In cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value. Culpepper v. Weaver Bros. Lbr. Corp., 194 La. 897, 195 So. 349; Theisen v. Broom, La.App. 1 Cir., 86 So.2d 736.
In contending that it was in good faith, the plaintiff corporation relies upon the testimony of its own right-of-way agent that, on the basis of a "preliminary survey" (which was not introduced into evidence), the company thought that the pipeline would run across tracts south of the defendant's land, to which rights-of-way were secured.
The plaintiff-appellant relies upon Goins v. Beauregard Elec. Cooperative, La.App. 1 Cir., 44 So.2d 715. In this case, however, the utility had in good faith relied upon the claim of ownership of the tract, evidenced by longtime possession up to a fence, of the landowner from whom the utility acquired the right-of-way deed. Its trespass was therefore held to have been in good faith.
There is no such showing in the present case. As far as the present record shows, the present utility went onto and across the defendant's land, without any legal right or title to do so, and without the slightest investigation to see whether or not it had a servitude to the land over which it actually constructed its pipeline. There is also evidence that the plaintiff company's construction crews destroyed landmarkers showing the dividing line between the defendant's land and that of other landowners to the south of her (from whom the plaintiff company had secured right-of-way *115 deeds). As a mark of the present plaintiff's attitude in the matter, it continued to construct and it completed its pipeline across the defendant's land, even after the defendant landowner had through her attorney informed the company of its trespass.
In our opinion, the trial court correctly assessed damages for the timber destroyed on the basis that the present was a willful and reckless trespass. The amount of this award is proved by the testimony of the expert testifying for the defendant; we find no error in the trial court's accepting this valuation and rejecting the lesser timber value to which the plaintiff's expert testified.

Decree.
For the foregoing reasons, the judgment of the trial court is affirmed. The plaintiff-appellant is assessed with the costs of this appeal.
Affirmed.