TATE, Judge.
The plaintiff-condemnor appeals from an award of severance damages in the present expropriation case. It was consolidated for trial and appeal with two companion suits concerning nearby tracts. These appeals involve identical issues. The decisions in the companion suits are rendered this date. Texas Gas Transmission Co. v. Young, La. App., 177 So.2d 148 and Texas Gas Transmission Co. v. Daspit, La.App., 177 So.2d 149.
The only issue on appeal is factual— whether the trial court correctly determined the amount of severance damages caused to the remainders of the three tracts by the taking of a right of way servitude for construction, operation, and maintenance of a high-pressure gas pipeline.
The awards made in these three suits have previously been considered in earlier *146 appeals to the Supreme Court. Texas Gas Transmission Corp. v. Broussard, 234 La. 751, 101 So.2d 657; Texas Gas Transmission Co. v. Daspit, 234 La. 760, 101 So.2d 660; Texas Gas Transmission Co. v. Young, 234 La. 761, 101 So.2d 660. In these prior appeals, the Supreme Court affirmed the award for the servitude-taking itself. However, it felt that there was insufficient evidence in the record before it by which to determine the diminution in value of the remainder of the property occasioned by the taking. vThe court therefore remanded the proceedings for the restricted purpose of determining the severance damages to the three tracts.
On the earlier appeal, the Supreme Court held that the highest and best use of the land was for residential and campsite subdivision near the thriving and expanding municipality of Lafayette (based upon which was to be computed the depreciation in value caused by the taking for high-pressure pipeline purposes). See 101 So.2d 659: “* * * [T]he record clearly shows that the instant tracts, while presently being used for farming and grazing purposes, are appropriate and desirable for small acreage home sites and camp sites (from one to six acres each).”
With regard to severance damages, the Supreme Court further observed: “ * * * obviously some diminution in value would result to the individual plots situated adjacent or in close proximity to the right of way, this because of the potential danger involved and of the requirement that to obtain financing of construction the building must be erected a certain distance from the line (the evidence discloses the requirement but not the exact distance).” 101 So. 2d 659. The court noted that there was not sufficient evidence before the court by which to accurately determine the extent of such diminution or depreciation. It therefore remanded the appeals for such determination, with the instructions, 101 So.2d 659: “To that end all tracts should first be platted, according to the best possible plan, for the development of small acreage plots. Then the defendants should establish by competent evidence the difference between the market value of each adversely affected plot immediately before and immediately after the expropriation. The total difference between those market values would constitute the severance damages to which these defendants are entitled.”
These findings of the Supreme Court on the earlier appeal, and its instructions as to how to determine severance damages, constitute the “law of the case” which is binding on the lower courts on the remand. See Keller v. Thompson, La. App. 3 Cir., 134 So.2d 395, certiorari denied. We therefore do not consider contentions and evidence advanced by the plaintiff-con-demnor in an effort to re-litigate issues adversely determined against it by the Supreme Court on the first appeal.[1]
On the remand, only one of the plaintiff-condemnor’s expert witnesses attempted to establish severance value as directed by the Supreme Court in the earlier appeal, that is, by comparing the difference in the market value of each home- or camp-site plot adversely affected by the taking, immediately before and immediately after the expropriation. This witness arrived at very nominal amounts of severance damages. For the reasons to be detailed below, we find no error in the trial court’s rejection of this witness’s testimony as ill-founded and unrealistic under the circumstances.
*147 The trial court’s award of severance damages was based upon the testimony of the expert witnesses testifying for the defendant landowners, who did value the land as directed by the Supreme Court’s decision on the earlier appeal.
These witnesses included: two independent real estate brokers (one of whom, Dwight Andrus, is also a prominent real estate developer, recognized even by the plaintiff’s witnesses as being most familiar with land values in the area and stipulated to be a qualified expert on all questions of valuation at issue) ; an engineer-surveyor stipulated to be an expert in subdivision-planning (who had participated as subdividing expert in many of the real estate developments in the area) ; and one of the defendant landowners, who is by profession a real estate agent and developer.
The subdivision-planner, an engineering expert, had prepared the subdivision plan for each tract so as, in his opinion, to allow the greatest possible return to the landowners, with the least possible damage from the high-pressure pipeline which crossed the tracts. These subdivision plans were plotted by him from ground studies to produce the greatest possible value for the most lots by taking advantage of the existing topography, tree lines, lakes, and other value-influences affecting the three tracts. These plans also took into consideration the most marketable lot-acreage, as reflected by lot-area marketability in the locality (as, for instance, in a subdivision immediately across the highway from one of the subject tracts).
All of the defendant’s other real estate experts agreed with this planning expert that his proposed subdivision plans were the best possible for residential development of the three tracts.
Each of the real estate experts testified as to value before and after the taking of those lots they believed were diminished in value by right of way taken for the high-pressure pipeline. In general, they felt that values had been affected only of those lots across which the pipeline or a portion of the right of way actually crossed. A varying diminution in value of the respective lots was individually estimated according to the extent or placement of the encroachment of the pipeline right of way.
The market value of the affected lots before the taking was derived from comparable sales in the area, based upon what developers would pay per lot to the landowners. In determining the diminution in-value of the affected lots by reason of the pipeline encroachment, the defendant’s real' estate experts relied not only upon their general knowledge and experience; they also estimated such with reference to specific instances in other subdivisions where the sales price of lots with pipeline-encroachments was depreciated in comparison with the sales price of comparable-adjacent or nearby lots free of this depreciating factor.
The testimony of these experts testifying for the landowners appears to be well' founded. This testimony adequately proves-by a preponderance of the evidence the respective amounts of severance damages-found by the trial court to have been sustained by the three tracts as a result of the taking. We find no difficulty in affirming the trial awards.
As earlier stated, only one of the plaintiff’s expert witnesses attempted to determine severance damages caused by the taking in the manner directed by the Supreme Court by its remand on the earlier appeal: by a comparison of the before-and-after values of subdivision lots. We find' no error in the trial court’s discounting this witness’s testimony as ill-founded and' unrealistic under the facts of this case.
This expert arrived at negligible severance damage figures as to each of the tracts, based chiefly upon his assumption (disproved by the preponderance of the testimony) that no subdivision lots were damaged by being traversed by a high-pressure pipeline right of way unless the right of *148 way was so located as to prevent construction of a building directly upon the pipeline right of way. This expert’s assumption was based upon consideration of isolated instances where smaller pipelines (of a low-pressure local service nature) than that here involved had not apparently lowered values in these instances. However, on cross-examination the expert did admit that pipeline crossings had indeed caused a diminution of value in comparable lots in other subdivisions in the area, when particular sales to this effect were called to his attention.
This expert plotted the most valuable of these tracts (Daspit) to produce many lots of smaller size (% to J^-acre) than the one- and-some acre size deemed by the defendant landowners’ experts to be most merchantable in this semi-rural area, based on sales in neighboring subdivisions. (See also Supreme Court’s prior finding that the best value for that neighborhood was to be based upon subdivision into lots of greater individual area. 101 So.2d 659, quoted above.) We find no error in the trial court’s accepting instead the values reached by the plaintiff’s experts based upon plotting into fewer lots, larger and more regular and therefore, under the evidence, much more merchantable in the neighborhood in which the parent tracts are located.
In summary, we find no error in the trial court’s having accepted testimony of the defendant’s expert witnesses as more competent and relevant than that of the plaintiff-condemnor’s witnesses, under the facts of the case, to establish the severance damages sustained by the three tracts. We further find that the awards for severance damages made by the trial court are supported by the preponderance of the evidence.
For the reasons assigned, the judgment of the trial court is affirmed, at the cost of the plaintiff-appellant.
Affirmed.

. A large part of the plaintiff-appellant’s argument, as well as much of the evidence taken by it on remand, is to support contentions (a) that the rural-subdivision use of tbe land is so speculative and conjectural as not to constitute the highest and best use of the land upon which severance damages should bo based, and (b) that, even so, tbe high-pressure pipeline did not really cause any depreciation in market value of tbe tracts’ remainders. As we understand the decision in the earlier appeals, both of these contentions have been rejected by the Supreme Court.