TATE, Judge.
This is a suit to expropriate a right of way 66 feet wide across the roadside front of some land owned by the defendants. The right of way was to be used for construction of a 36" high-pressure natural gas pipeline. The plaintiff condemnor (Trunkline) appeals from an award of $10,674 for the taking and the severance damages sustained by the remainder of the tract. The defendants answer the appeal to request additional severance damages.
The chief issue of the appeal is whether severance damages are awardable to property crossed by the servitude expropriated or immediately adjacent to it. The issue is essentially factual.
The pipeline servitude crossed Lots 6, 7, and 8 of the “Reverview Estates” subdivision owned by the defendant developers. The servitude crossed them at the road front, just barely encroaching on Lot 6 as the servitude curved westward. Lot 6 and Lot 7 contained 10 acres; Lot 8, 35 acres.
As the trial court found, the preponderant expert testimony supports the findings that: (1) there was a present market value for the tract for sale for rural homesites (“country estates”) of 10-acre size, as well as in the 11/^-3 acre size sold in the neighborhood; (2) that the value of *56 Lots 1 through 7 was $1,000 per acre; (3) that the value of Lot 8, which was depreciated greatly by a pre-existing pipeline and valve station, was only $500 per acre; and (4) that these values took into account the depreciation resulting from an electric power line servitude granted across the rear of these large lots
Trunkline’s experts testified that no severance damage would result to the remainder of the lots outside the servitude running across its front, because the purchaser of the country estate would simply build his house deeper within the 10-acre lot.
The landowners’ experts testified to the contrary. They stated that the high-pressure pipeline across the entire front would depreciate the value of Lots 7 and 8 by fifty per cent. They felt this would result because of the restriction on any building to thus a depth of some 200 feet, and because to avoid the real or imagined hazard of pipeline explosion the purchaser would contemplate building at a substantially greater depth. They pointed out that to do so would necessitate construction of a much longer and much more expensive all weather driveway, which they noted is a reason that even in farming country the owners of greater acreages commonly build near the road. The realtors relied upon their experience of buyer resistance to the sale of other subdivision lots crossed by or near smaller high-pressure natural gas lines.
These experts also felt that for similar reasons the other nearby lots would suffer a loss in value. For instance, Lot 6 is immediately adjacent to the pipeline, and it is crossed at a corner by the servitude to a depth of 12 feet; the experts thought Lot 6 would suffer a loss in value of 30%. In their opinion, the other lots, being further away, would suffer diminishing diminutions in value — Lot 5, a loss of 20% being 300 feet distant from the pipeline; Lot 4, 10% (575 feet distant); Lot 3, 5% (825; feet distant); Lot 2, none (1075 feet distant) .
Under the evidence, we find no-error in the trial court finding that Lots 6, 7, and 8 crossed by the servitude did suffer varying degrees of loss of market value of the remainder of each lot, thus entitling the landowners to severance damages. We likewise find no error in the-trial court’s finding that under the evidence the other more distant lots did not suffer any loss in market value because of the new pipeline.
The trial court’s legal conclusions are supported by the holdings in the following-decisions: Texas Gas Transmission Corp. v. Broussard, 234 La. 751, 101 So.2d 657, followed on remand, La.App. 3 Cir., 177 So.2d 145; Texas Gas Transmission Corp. v. Pierce, La.App. 3 Cir., 192 So.2d 561; Gulf States Utilities Co. v. Cormier, La.App. 3 Cir., 182 So.2d 176; Gulf States Utilities Co. v. Sonnier, La.App. 3 Cir., 182 So.2d 195; United Gas Pipe Line Co. v. Nezat, La.App. 3 Cir., 160 So.2d 367, certiorari denied; Coastal Transmission Corp. v. Lejeune, La.App. 3 Cir., 148 So.2d 111; Trunkline Gas Co. v. Cassidy, La.App. 3 Cir., 138 So.2d 424.
The trial court found that the remainder of Lot 7 suffered a 50% loss in value because of the destruction of its frontage for building purposes, and that of Lot 6 only 10% because the smaller front area was affected. We have little-difficulty in affirming the trial court’s conclusions as to severance damages due for the loss in value caused these two 10-acre lots by the new pipeline.
We were given some pause, however, by the allowance of 20% loss in market value for the 35-acre Lot 8. This tract was valued at only $500 per acre because of a prior pipeline servitude across most *57 'o'f its front, as well as because of its large •size and thus greater proportion of rear acreage. Because of this prior servitude, 'two pipelines dead-ended in Lot 8 from .across the Red River, and there was a valve-site servitude granted by a previous •owner. We have ultimately concluded, however, that under the evidence we cannot ■say that the trial court committed manifest •error in allowing a $100 per acre loss in value of this lot also.
The preponderant evidence shows that, prior to the taking this acreage had a market value for residential homesites, although already reduced to $500 from $1,000 because (chiefly) of the previous pipeline servitude. One of Trunkline’s experts testified that the tract had a value of $400 per acre valued only as pasture land. The effect of the new pipeline is to completely ■destroy the usefulness for building purposes of the remaining 110' of frontage, previously free of servitude but now crossed •only 175/ from the road by a new high pressure pipeline. According to the landowners’ experts, from the standpoint of buyer-resistance, the net effect of this additional restriction on building is to reduce the remaining residential-use value of this tract so greatly that its resulting market value for residential purposes will be only $250 per acre. This will be less than what Trunkline’s experts say its value is as pasture land ($400 per acre). We are not prepared to say that the trial court erred in awarding the landowner compensation for this unfavorable transformation in the nature of the best and most profitable use of his property.

Errors in Computation.

However, we have discovered two errors in computation which require a slight reduction of the award.
The trial court awarded not only the full fee value of the .632 acre servitude taken. It also allowed the full fee value ($632) of the lot frontage between the road and the new pipeline, since the value of this had been completely destroyed for building purposes. As to this frontage, we think the landowner is adequately compensated by the severance damage awarded for the reduction value of each entire lot. The award of percentage depreciation for loss of value of each lot’s entire acreage already includes an allowance for this acreage. We will therefore disallow the award of $632 for the loss of value of this acreage.
Additionally, the trial court allowed $5,000 for the 50% depreciation in the value of the Lot 7’s ten acres. The defendant landowners should not receive severance damages upon the .632 acres of Lot 7 included in the servitude taken, for which they were awarded full value because of the taking. Texas Gas Transmission Corp. v. Primeaux, La.App. 1 Cir., 100 So. 2d 917. Accordingly, the award must be reduced by an additional net amount of $316 (i. e., the 50% severance damages allowed for .632 acres of Lot 7).
In summary therefore, because of these errors of computation, the award should be reduced a net amount of $948.

Decree.

For the foregoing reasons, the trial court award is reduced by the net amount of Nine Hundred Forty-eight and No/100 ($948.00) Dollars. As thus reduced, it is affirmed in all other respects.
Amended and affirmed.