MILLER, Judge pro tem.
This suit arises out of an expropriation by the Louisiana Highway Department for an improvement consisting of a concrete, four-lane, non-access highway, with blacktop service roads on either side. From a judgment of the trial court in favor of defendants in the amount of $597.30 as additional compensation in excess of the $273.00 heretofore deposited in the registry of the court by the plaintiff, defendants have appealed.
The expropriated property is located two or three miles from the center of Poncha-toula, Louisiana, and several miles south of Hammond, Louisiana. The tracts taken are designated as:
(1) “Lot 43, Pit No. 5” which is shown on the map as containing 2.-927 acres to be used as a borrow pit from which fill for the new highway was taken.
(2) “Tract No. 28”, a small triangular piece containing 0.27 of an acre forming a part of the highway right-of-way of the new project.
(3) “Tract No. 28A”, which is for a slight widening of the approach to a pre-existing gravel road, referred to as the Thompson Road, this tract being 0.032 of an acre.
Defendants’ original tract contained 100 acres lying along a gravel road (Thompson Road). From this 100 acre tract they had previously sold to John Barr a tract of approximately 15 acres situated in such a way as to split the road frontage of defendants leaving about 15 acres (subject area) to the south of the Barr tract and *427 the balance on the north side. This IS acre tract from which the expropriated tracts were taken is bounded on the west by the Thompson Road, north by the Barr property, and south and east by the meanderings of the Ponchatoula Creek. At the time of the expropriation this tract was being used for growing pine timber. The merchantable timber had been cut some three years before and it had a stand of young pine at the time of the expropriation.
The property was expropriated on January 2, 1958, and the trial was had on May 16, 1960.
Defendants’ two appraisers and principal witnesses, Mr. Thomas Womack and Mr. Robert Farris, both valued the land in question at approximately $1,000.-00 per acre. Mr. Womack fixed the compensation for the land and resulting damages at $1,000.00 an acre while Mr. Far-ris, in addition to assessing a valuation of $1,000.00 per acre, thought there should be damages of $1,000.00 for entrance upon the other property, and $2,000.00 for the remainder of the property that the borrow pit cuts off and makes useless. Neither of these appraisers furnished any comparable sales in the area, nor any systematic method or procedure for arriving at the values they placed upon the property. Furthermore, both of these appraisers visited the property about a month before the trial and knew nothing about it as of January 2, 1958, the date of the expropriation. In cross-examining plaintiff’s witnesses defense counsel asked if they knew of certain specified sales, indicating a selling price of $1,000.00 or more per acre. However, the same sales were never mentioned when questioning defendants’ own witnesses; and, even though the court re-opened the case for offering of comparable sales by the defendants, the defendants did not prove comparability of the sales thus referred to nor offer them in evidence. These considerations obviously affected the weight given their testimony by the trial court and rightly so. The Supreme Court of Louisiana in the very recent case of State of Louisiana through the Department of Highways v. Levy, 242 La. 259, 136 So. 2d 35, held that the defendant landowner has the burden of proving his claim in expropriation matters and this loss must be shown with reasonable certainty. See also LSA-R.S. 48:453. We find the defendants did not carry the burden required of them.
Mr. Max J. Derbes, Jr. was one of two appraisers called by plaintiff. Mr. Derbes testified that he was requested by the Department of Highways to make an appraisal of the subject property. In that connection he examined sale transactions not only in this immediate area but in a 32 square mile surrounding area to familiarize himself with the values, land use, and market. When asked for his opinion as to the best use of this land Mr. Derbes testified as follows :
“My opinion is the best and highest use of this tract as of January, 1958, speculative land with potential timber revenue. In other words, it had been cut over more or less completely in 1954 and 1955. A few non-commercial trees had been left on it and, of course, the property is between' two and three miles from the center of Ponchatoula and a few miles south of Hammond and has some potential in the future for residential subdivision land. Lands in this catagory are generally held by owners for future potentials as subdivisions.”
Mr. Derbes testified concerning comparable sales in the area and mentioned specifically a sale in 1956 of similar type land (wood land) valued at approximately $100.00 per acre. He testified as to another sale in 1957 for four acres of land at $650.00, or $163.00 per acre. He stated that this price included timber which had a value of approximately $150.00 or $200.00. He testified regarding another transaction dated in 1959 involving 31 acres lying west of Ponchatoula approximately the *428 same distance as the subject property is north of Ponchatoula. It also involved the same type of road which the subject property was on before the taking. The sale price there was $155.00 per acre. However, he pointed out that this was in 1959 and that since then the whole area had benefitted by the interstate highway. Mr. Derbes valued the property as of the date of the taking at $125.00 per acre.
The plaintiffs called as its other appraiser and witness, Mr. Carroll Trahan, who testified that his estimate of the just compensation as of January 2, 1958, was based upon comparables in the immediate vicinity of the subject property. Mr. Tra-han’s testimony including his estimate of the value of the land was substantially the same as that given by Mr. Derbes.
Defendants urge strongly that the compensation for the borrow pit should be based upon the cost price of dirt removed rather than upon the value of the acreage taken. The trial court stated that it allowed this evidence only in the hope that it might throw some light upon the value of the acreage as a whole. However, the trial court concluded that it received little assistance from this evidence and would therefore disregard it. We find no merit to the argument that damages are to be assessed in cases of this nature by the value of the fill taken from the borrow pit. In State of Louisiana through the Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881, 885 (1955), the Supreme Court affirmed the lower court’s allowance of full acreage price for a borrow pit. The court pointed out that since the dirt from that area would be removed to a depth of ten feet, the tract would have no practical value to the defendant who used the plantation principally for pasturage and farming. In response to defendants’ request for even greater damages than full acreage, the Supreme Court concluded with this reasoning:
“Forasmuch as defendant is being given the full value of the land used for a borrow pit, we think that this sufficiently compensates him not only for the value of the dirt taken therefrom in the construction project but also for any and all damages, actual or conjectural, which he may thereafter sustain as a consequence of the excavation in this area.”
Accordingly, we find that the proper measure of damages is the full acreage of that portion taken as a borrow pit.
We likewise concur with the trial court’s finding that based upon the comparables offered together with the location and terrain of the property, a valuation of $150.00 per acre for the land taken as of the date of the expropriation is just compensation. We take into consideration that it was cut-over pine land located on a gravel road some distance away from any paved or black topped highway at the time of expropriation.
We adopt the trial court’s items of damage in this case stated as follows:
“Mr. Womack and Mr. Farris both testified that the excavation of the borrow pit covered an area which was actually measured as 520’ x 310' which would be an area of 3.7 acres. (T.26, T.40). The court is going to consider this as the true area of the borrow pit.
“All witnesses seem to be agreed that the area of one-half acre between the borrow pit and the creek has been rendered useless.
“There is an area measuring 100' by 300' which 0.7 of an acre (is) between the borrow pit and Thompson Road. While Mr. Derbes contends that this is suitable for commercial purposes at the present time in view of the new highway, this court is of the opinion that this area would be of no value for either commercial or residential purposes, due to the fact that this borrow pit, which is a deep hole, is immediately behind it.
*429 “The further area, from the southwestern corner of the borrow pit on down to the tract #28 which Mr. Der-bes estimated as measuring 18(K by 260' or an area of 0.6 of an acre, the court likewise considers of no value for either commercial or residential purposes. The commercial value would be negligible due to the further fact of its location only on the service road, apparently more than a mile either way from access to this through-way, which accesses are located near large towns where the commercial establishments serving motorists on the through-way would be located.
“Therefore, the court is going to figure that the taking herein actually amounts to the taking of the following areas:
Acreage Tract
0.27 #28
0.032 #28 A
3.7 Borrow pit
0.7 100' by 300' between borrow pit and Thompson Road
0.6 180' by 260' between bor- . row pit and Tract #28
0.5 between borrow pit and creek
5.802 acres taken or rendered useless.
@ $150.00 value per acre
$870.30 Total value of the taking.”
Regarding defendants’ claim for damages to the remaining tract the trial court made the following observations:
“On the date of the expropriation the highest and best use of this tract and the use it was being put to was the growing of pine timber. On the date of the trial, this tract was just off the blacktopped service road which had a blacktopped turn-off on to the Thompson Road which turn off extended to defendants’ land. In addition to its being nearly adjacent to a blacktop road, this remaining tract is in full view cif the' four-lane through-highway. Therefore, as of the date of the trial, it is the court’s opinion that the tract that remains has been benefitted by the improvement in that it raised it to potential subdivision status, and that this improvement to the property offsets any further damage to the remaining tract, other than the damage to the additional areas which has been considered hereinabove as included in the total expropriation because rendered valueless by the taking.”
We are in accord with the findings of the trial judge.
For these reasons, the judgment is affirmed.