TATE, Judge.
By two separate proceedings involving the same 211-acre tract owned by the defendant landowners, the plaintiff Department expropriated: (a) An 18.8-acre strip in fee, to be used in the construction of the controlled-access Interstate Highway; (b) A servitude for borrow pit purposes on a 67.99-acre tract situated within the interior of the defendants’ property.
The present suit arises out of the former taking. A companion suit of the same title was based upon the second taking, 149 So. 2d 171; these companion proceedings were consolidated for trial and appeal with the present suit.
The sole issue involves the amount to be awarded to the defendant landowners for the property taken and for the severance damages caused to the remainder of the parent tract by the takings.
The defendants-landowners appeal from the trial court valuation, contending that the trial awards were insufficient in amount. The appellee-Department answers the appeal, praying that the amounts of the awards be decreased by some twenty thousand dollars back to the ninety-one thousand dollars originally deposited by the Department in connection with the takings.
Before the expropriations, the parent tract owned by the defendant landowners comprised one contiguous tract of 211 acres, bounded on the south by a hard-surfaced highway leading directly into the metropolitan area of Lake Charles. All experts testifying agreed that the highest and best use of the land was as potential subdivision property.
The first (or present) taking by the Highway Department occurred by filing of the present suit on June 24, 1960. By this taking, the fee title to an 18.8-acre strip was expropriated through the defendants’ property for the right of way of a controlled-access Interstate- Highway. See Parcel “A” on sketch below. By this first taking, the parent tract was divided into (a) a 37.41-acre parcel south of the Interstate Highway strip (see Parcel “D” on sketch) and (b) a 154.83-acre tract north of the Interstate right-of-way (see combined Parcels “B” and “C” on sketch).
The second taking by the companion suit occurred five days later. By this later taking the State expropriated a servitude for borrow pit purposes on a 67.99-acre tract carved out of the interior of the property left north of the Interstate Highway strip. See Parcel “B” on sketch.

*166

*167 Four experts testified as to valuations and severance damages, two for the State, and two for the defendant landowners. Although the experts arrived at different figures, they used basically the same approach, utilizing much the same comparable sales and methods of analysis.
1. Valuation of parent property and of takings.
The trial court concluded that the fair market value of the defendants’ entire tract prior to the first taking was $1,160 per acre. This came close to being an average of the valuations of the four experts, which varied from $1,000 to $1,312 per acre. Although both parties question the result, we find no error or abuse of discretion by the trial court in arriving at this figure, which was reached after it gave consideration to the testimony of each of the experts, all of whose opinions on the subject appeared to be well grounded and sincere.
The landowner defendants contend, however, that even though this figure is accepted as the average value per acre of the entire 211-acre tract, nevertheless the 18.8-acre tract taken for the highway (Parcel “A”) was more valuable than the average per acre, since the average per acre took into consideration the less valuable .rear portions of the property, further away than Parcel “A” from Opelousas Road, upon which neighboring subdivisions fronted. In making this argument, the defendants rely upon the testimony of their experts and also upon the admitted fact that the expropriating authority had voluntarily paid $2,500 per acre for the highway right of way through the Scimemi Subdivision immediately contiguous (see sketch) to the present highway right of way taken.
Although this is a forceful argument, the trial court did not, in our opinion, abuse its discretion by holding that the right of way strip had no greater value than the average price of the entire tract. Unlike the Scime-mi Subdivision, for instance, no prior development had taken place between the Opelousas Road and the highway strip taken, which was some 500-700 feet north of it. Consequently, as the plaintiff’s experts testified, the strip taken had a lesser value than land immediately adjacent to a developed area on the Opelousas Road, since the strip expropriated did not have utilities as readily available and roadways connecting it with the Opelousas Road. The consideration for the Scimemi property, furthermore, included not only the value of the land itself taken, but also the not inconsiderable servance damages occasioned by acquisition of a right of way through an already platted and partially developed subdivision.
Contending contrariwise that the trial court valuation was too high, able counsel for the Highway Department points out that, at the commencement of trial, it was stipulated that the value of the land taken for borrow pit purposes was stipulated to be worth a figure of approximately $1,130 per acre.
This stipulation, however, was made specifically without prejudice to the defendants’ claim for severance damages. The intent of the stipulation, both from its wording and from the subsequent testimony of the defendants’ experts, was simply to agree to the value of the borrow pit land after the first taking of the highway strip had (five days earlier) decreased the value of all land north of the highway right of way (including the borrow pit land), because of the complete loss of access to it for a period in excess of two years, during the period of construction of the Interstate Highway. (See LSA-R.S. 48:453, providing that the market value of the land taken is determined as of the time of the taking.)
2. Severance damages,
LSA-R.S. 48:453 provides severance damages to the land remaining after the taking must be determined as of the date of the trial (although the market value of the land expropriated is determined as of the date of the taking). Our jurispru *168 dence is well settled to the effect that the severance damage allowable as a result of an expropriation is the difference between the market value of the remaining property before and immediately after the taking. State, Through Dept. of Highways v. Gani, La.App. 3 Cir., 138 So.2d 683.
Under LSA-R.S. 48:451 the landowner has the right to claim these damages up to a year from the date the highway department notifies him it has accepted the construction of the highway project for which the property was expropriated. Counsel re-urges the Department’s contention that suits for severance damages are therefore premature until after final construction and acceptance of the highway project, although this perhaps may not take place until several years after the taking. We have previously rej ected this contention and have held that the statutory provision permitting such long delay within which the landowner may judicially assert his claim for severance damages, does not prevent the landowner from filing his claim earlier and securing a more prompt judicial determination of the severance damages and loss of value to which he is entitled as a result of the taking. State, Through Dept. of Highways v. Williams, La.App. 3 Cir., 131 So.2d 600.
Now, as to the amount of severance damages to be awarded, it is agreed that the land south of the highway right of way taken would suffer no loss in value as a result of the taking thereof. (Parcel “D”.)
The trial court held that, as a result of the two takings, the defendant landowners had sustained severance damages to the land north of the highway right" of way in the total sum of $20,353, being the difference in market value before and after the taking. The court arbitrarily allocated one-fourth of this amount to the present taking and three-fourths of the amount to the taking of the borrow pit servitude in the companion suit. (Neither party questions this arbitrary allocation.)
Although the trial court did not award severance damages in as great an amount as the defendants’ experts testified, the court essentially accepted their testimony that, as of the date of the trial, the market value of the defendants’ tract north of the highway right of way was reduced for the following reasons because of the two takings: (a) The expropriation of the highway strip deprived all land north of it of any outside access whatsoever for purposes of development or resale for at least two years and probably longer (that is, until the Interstate Highway and its service roads could be constructed), which is a factor decreasing the market value of the land to a prospective purchaser; (b) The borrow pit, which would leave a hole estimated at 12-20 feet deep in the middle of the northern tract, (1) would require a different and less efficient platting of residential lots with consequently more wastage of land for streets and odd shapes, (2) would cause additional development costs in order to make the lots available for sale, (3) would make many of the lots less valuable because of a reduction in depth, and (4) would reduce the value for resale of any lots fronting on or immediately adjacent to the deep borrow pit because of the hazard to children and of other drawbacks in property so closely situated to a deep hole — all of which factors would definitely affect market value, according to the very detailed calculations of these experts.
Against these opinions, the plaintiff’s experts testified that the land north of the highway right of way did not suffer any severance damage at all. In their view, such damages as were sustained were offset by the alleged benefits to accrue from having the borrow pit situated on the property. These experts testified that the borrow pit could be converted into a marina by connecting it with the nearby English Bayou (see sketch above), as a result of which the lots adjacent to the borrow pit would enjoy additional value per front-foot as water front property.
*169 However, based upon the opposing testimony of the defendants’ experts that this deep 70-acre hole in the ground could in no way be conceived of as other than a detriment to a residential subdivision, and upon their testimony that the costs of converting this hole in the ground into a marina would far offset any alleged special benefits that might be derived by doing so, the trial court rejected such contention advanced on behalf of the plaintiff Department. We find no error in the trial court’s ruling in this regard. Valuations in expropriation suits should not be based on speculative testimony that by expensive alterations or preparations the property might be made suitable for some specialized use, by reason of which the property would theoretically have an enhanced market value. State, Through Dept. of Highways v. Hub Realty Co., 239 La. 154, 118 So.2d 364; Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491.
The defendant landowners question the valuation of the trial court insofar as it took into consideration the opinion of the plaintiff’s experts that the property north of the highway right of way would suffer no severance damages at all. Defendants-appellants point out that the opinion of these experts was proven to be ill-founded in this regard and should not even have been considered in arriving at the amount awarded as severance damages. Therefore, it is suggested, the appreciably higher severance damages estimated by the defendants’ experts should have been awarded, instead of a lower figure reached by considering the ill-founded opinions of the plaintiff’s experts.
This contention of the defendants-appellants is forceful and has much merit. However, considering all the facts and circumstances of the present record, we are unable to hold that the trial court acted arbitrarily or committed manifest error in taking into consideration some of the factors to which plaintiff’s experts testified, which would have the effect of minimizing the rather high severance damages to which the defendants’ experts had testified.
We therefore find no error in the trial court’s judgment insofar as it held that Parcel “C” (the remaining land north of the highway but not including the borrow pit) had sustained severance damages in the amount of $20,353 awarded. The trial court reached this figure by finding that, prior to the two takings, the 124.25 acres of Parcels “C” and “D” had a total valuation of $144,130 at $1,160 per acre. After the taking, and as of the date of the trial, these same 124.25 acres were found by the trial court on the basis of the experts’ testimony to be worth only $123,777. The difference between the before and after takings values was the basis of the severance damages awarded. (This entire loss of value was suffered by Parcel “C”, north of the highway taking, since the experts testified that Parcel “D”, south of the highway taking, had suffered no loss of market value by reason of the takings. These experts, accordingly, used in their computations the same “before” and the same “after” value for Parcel “D”.)
3. Severance damages to borrow pit land (Parcel “B”).
As can be seen by these computations, the trial court omitted any reference to the damages sustained by the 67.99-acre borrow pit tract (Parcel “B”) as a result of the first taking of the highway strip (Parcel “A”).
This brings us to the final contention made by the defendants-appellants. They point out that the trial court properly allowed severance damages as of the date of the trial caused by both takings to Parcel “C” (the land north of the highway taken, excluding the borrow pit), but that nowhere did the trial court make an award for the reduction in value caused by the earlier taking to the 67.99 acres taken for borrow pit purposes five days later (Parcel “B”).
It was stipulated at the commencement of the trial that the defendant landowners *170 were entitled to recover an award which amounted to about $1,030 per acre for the 67.99 acres upon which a borrow pit servitude was expropriated. Since the mineral rights under the land had no value, it is not contested that this award of $1,030 per acre was the full value of the land on the date that the borrow pit servitude was taken. (It has been held that a landowner may be entitled to the full market value of the land taken for a temporary servitude for borrow pit purposes, where the usefulness of the land will be substantially destroyed by the taking. State, Through Dept. of Highways v. Glassell, 226 La. 988, 77 So.2d 881; State, Through Dept. of Highways v. Ponder, La.App. 1 Cir., 140 So.2d 426. Although in these cases no severance damages were allowed as a result of the taking of the temporary servitude for borrow pit purposes, therein only rural pasture or cutover land of little value was concerned; these decisions are not authority that severance damages caused by the taking should not be allowed in instances such as the present, when a deep dangerous hole in the ground is constructed in the middle of land suitable for a residential subdivision.)
The defendants-appellants point out, correctly in our opinion, that they stipulated that this borrow pit land (Parcel “B”) had a value at the time of its taking of only $1,030 per acre, but that their stipulation and their proof specifically indicated that such value was lower than its value before the first taking of the highway strip. According to their experts, this lowered market value was directly caused by the earlier taking for highway purposes, as a result of which all land north of the expropriated highway strip was completely deprived of outside access for in excess of at least two years, both at the time of the first taking and at the time of the trial six months later.
It is apparent to us that the trial court merely overlooked this item of severance damages to which the defendant landowners are entitled. This is illustrated by the trial court finding that the entire parent tract had a value of $1,160 per acre prior to the first taking. Nevertheless, although the borrow pit land (Parcel “B”) was rendered completely worthless by its being taken for the construction of a deep borrow pit, nevertheless the defendant landowners have only received from the State total compensation in the amount of $1,030 per acre for it — that is, $130 per acre less than its full value.
The defendant landowners are unquestionably entitled to recover the severance damages caused by the first taking to this borrow pit tract (Parcel “B”), being a loss in the market value of about $130 per acre because of the deprivation of access to it caused by the first taking.
Able counsel for the appellants contends that the defendants-appellants are not entitled to recover for this loss of value, because, although the land taken is valued as of the date of the taking, severance damages are determined as of the date of the trial, LSA-R.S. 48:453. The simple answer to this contention is that, as of the date of the trial, the borrow pit tract had suffered a loss of value of about $130 per acre by reason of the first taking, which was not included within the compensation paid to the landowners for the second taking. We cannot hold that the Highway Department can by the arbitrary sequence of its takings impair the value of a landowner’s property and thus avoid paying him full compensation for the value of the property taken.
Perhaps the easiest way to illustrate the error into which the trial court inadvertently fell, is to point out that the market value of the 211 acres of the defendants’ property before any takings by the Department was a total of $244,760, as found by the trial court (211 acres at $1,160 per acre). If the trial court judgment remains unchanged, following both takings, the defendant landowners (a) will have received $91,780 for the property taken by *171 the two takings (Parcel “A” and Parcel “B”), (b) will retain land valued by the trial court at $123,777 (Parcel “C” and Parcel “D”), 124.25 acres, and (c) will be awarded only $20,353 severance damages (the loss in value to Parcel “C” and Parcel “D” only caused by the takings) — that is, the landowners will after both takings retain land or receive compensation (including severance damages) having a total combined value of $235,910, or a value of $8,850 less than they owned prior to both takings. (They will still also own a hole in the ground, Parcel “B”, which has no value and which constitutes instead a detriment to the, remainder of their property.)
This difference of $8,850 constitutes the severance damage caused by the first taking to their borrow pit land.
Stated another way, the total award (including both the value of the land taken and the severance damages) is determined by the difference between the market value of the entire property before the acquisition, and the market value of the property remaining after the acquisition. Comment, “Expropriation — Consequential Damages”, 19 La.L.Rev. 491, 496 (1959); 4 Nichols on Eminent Domain (4th ed., 1962), Section 14:232, cf. also, sections 14.23, 14.231. By this method of calculation, the landowners owned property worth $244,760 before either of the takings; after both takings, they still owned property having a value of only $123,777. By both takings, the defendant landowners lost $120,983 in the value of the property. This is the total award (for land taken and for severance damages) to which they are entitled.
Of this total amount of recovery, $91,780 was awarded for the value of the land actually taken, leaving a difference of $29,203 in severance damages sustained by the landowners’ remaining property as a result of both takings. Since the trial court only awarded severance damages of $20,353, the defendant landowners are entitled to have their award increased by a net of $8,850 severance damages, the difference between these two amounts.
Since these additional severance damages were entirely caused by the first taking by this present suit, being substantially the loss in market value of Parcel “B”, caused by the present taking, these damages will be awarded by amending the judgment in the present expropriation suit only. We will not disturb the award in the companion suit, therefore.
For the foregoing reasons, the judgment of the trial court is amended by awarding the defendant landowners the additional amount of Eight Thousand Eight Hundred Fifty ($8,850) Dollars; as thus amended, the judgment of the trial court is affirmed.
Amended and affirmed.