174 So.2d 257 (1965)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Gilbert LANCON, Jr., Defendant-Appellant.
No. 1399.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1965.
E. L. Guidry, Jr., St. Martinville, for defendant-appellant.
D. Ross Banister, Glenn S. Darsey, Ben C. Norgress, William W. Irwin, Jr., by William W. Irwin, Jr., Baton Rouge, for plaintiff-appellee.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
The defendant landowner appeals as inadequate the trial award in this expropriation proceeding.
The plaintiff Department expropriated for highway improvement purposes approximately 1/10th acre from the front of *258 the defendant Lancon's property. Before the taking, the defendant's tract, a rural residential homesite, contained approximate one-half acre in total area, and it fronted on a gravelled highway with a depth of about 120 feet.
The defendant landowner principally complains that the trial court erred (1) in the method used to arrive at the award for the land taken, and also (2) in awarding only $1,800 severance damages by rejecting the defendant's expert's testimony that the remainder of the property had lost approximately two-thirds of its value (instead of about 12%, as found by the trial court) as a rural homesite because of the taking.
The legal principles applicable are not in dispute: The landowner is entitled to the market value of the land actually taken, as well as to any severance damages sustained by the remainder of his property, the latter being the difference between the market value of the remaining property just before and immediately after the taking. State through Department of Highways v. Hayward, 243 La. 1036, 150 So.2d 6; State through Department of Highways v. Davis, La.App. 3 Cir., 149 So.2d 164. Further, the landowner has the burden of proving his claim to a greater award than the amount deposited, LSA-R.S. 48:453, and his claim cannot include damages which are too remote and speculative, State through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35.
1. Value of land taken.
The trial court accepted the testimony of three appraisers for the plaintiff Department. Their valuation was based upon two sales of comparable rural homesites in the immediate vicinity of the subject property. The trial court accepted the conclusion of the plaintiff's experts that the property taken had a value of ten dollars per front foot for rural homesite purposes, or about 6 2/3¢ per square foot. We find no error in the trial award of $278 arrived at on this basis.
The defendant landowner's appraiser testified to a substantially greater value of the 1/10th acre taken. However, the other sales used by him as a basis of his valuation consisted of more valuable tracts in a more settled area, which were not in our opinion as comparable to the present property as were those sales of more similar property relied upon by the plaintiff's appraisers.
Further, the defendant's appraiser used the 4-3-2-1 method[1] of valuing the property taken, by which the front portion of a lot is given a greater value than other portions. Decisions in which this method of valuation or a variation of it has been approved (State through Department of Highways v. Sumrall, La.App. 1 Cir., 167 So.2d 503, certiorari denied, and State through Department of Highways v. Lewis, La.App. 1 Cir., 142 So.2d 652) concerned instances of city commercial lots where the front had a definitely higher value than the rear portions. We find no error in the trial court's conclusion that such a method of appraisal was inappropriate with regard to the present tract, a somewhat shallow rural lot, in which the front portion was not shown to possess a higher market value than the rear.
2. Severance damages.
The plaintiff's three appraisers felt that the remainder after the taking of the defendant's shallow home lot had suffered some diminution of value by its reduction in depth through the expropriation of approximately 25 feet (or about 20% of the depth) across the front. The appraisers variously estimated this loss in market *259 value as from 10-12% of the total value of the premises and improvements, which included a semi-brick two-bedroom home of about 1200 square feet in interior and certain outbuildings. Based upon their testimony, the trial court awarded $1,800 severance damages.
As a result of the taking, the defendant's home is now just 15 feet from the new right-of-way boundary and is now about 27 feet from the edge of the new widened and hard-surfaced highway. (Prior to the taking, the residence was 38-40 feet from the old right-of-way fence, which fence was about 6 feet from the edge of the former gravelled highway.)
The defendant-appellant contends, based upon his expert's estimate, that as severance damages he is entitled to an award of about $9,000, or for the loss of two-thirds of the value of his home premises. This is based upon the testimony of his expert appraiser that there is now practically no market value for the sale of the defendant's property as a residential site, because the home is now so close to the highway right-of-way and now lies on a banked curve, with consequent loss of privacy, disturbance through headlights flashing through the windows at night, and possible danger of cars leaving the highway at the curve and careening into the defendant's shortened front yard or into his home.
The trial court accepted instead the testimony of the plaintiff's appraisers that there was a much less loss in market value. Their estimate of 10-12% loss in market value was based upon their estimate of present market value of the home property after the taking, as well as the difference in the rental value of the property before and after the taking. One of the appraisers testified as to two comparable homes substantially retaining their value although situated on similar curves in nearby areas of the parish, one of which was under construction and on one of which a homestead loan had recently been obtained based upon the substantial value the home possessed despite its location close to the highway right-of-way on a curve in a rural highway similar to that on which the subject property is now situated.
Under similar circumstances, and rejecting contentions similar to those advanced by the present landowner, the courts have accepted expert testimony that only a 10-15% loss in market value of remainder residential property has been sustained by a taking which placed the residence close to the new highway right-of-way. State through Department of Highways v. Leger, La.App. 3 Cir., 170 So.2d 399, State through Department of Highways v. Johnson, La.App. 3 Cir., 168 So.2d 389, State through Department of Highways v. Bourg, La.App. 1 Cir., 135 So.2d 600, certiorari denied. The Leger and Johnson cases also illustrate that the effect on market value by a taking placing the highway close to improvements varies with the particular circumstances and the nature of the improvements, for although the residences therein were held to have been thereby diminished by only 10-15% of their market value, the landowners were awarded a 75% loss of market value in commercial buildings caused by the proximity to them of the highway right-of-way.
In State through Department of Highways v. Huson, La.App. 2 Cir., 166 So.2d 3, certiorari denied, the landowner was awarded a substantial loss in market value where the expropriation for a superhighway had completely destroyed the privacy of a five-acre rural tract and the new highway right-of-way was now located just 29 feet from the landowner's home. However, unlike the present case, such a loss in market value was substantiated by competent evidence accepted by the trier of fact as preponderant. The Huson decision also points out that inconveniences such as a loss of privacy are not compensable in expropriation proceedings unless the market value of the property is thereby diminished. Likewise, although a hazardous condition resulting from an expropriation is *260 compensable if it actually affects market value, see, e. g., Texas Pipeline Co. v. Barbe, 229 La. 191, 85 So.2d 260, the evidence herein of the plaintiff's experts negates any substantial loss in the market value of the defendant's property through any potentially dangerous condition allegedly created by the somewhat gradual curve of the new highway.
Under the present facts and testimony, we find no error in the trial court's acceptance of the Department's expert testimony in arriving at severance damages of only $1,800, and in rejecting the landowner's appraiser's testimony that the value of the residence had been substantially destroyed because the home was now situated so close to the highway right-of-way.
3. Conclusion.
We therefore affirm the trial court's award of $278 as the market value of the land taken and of $1,800 as the severance damages sustained by the remainder. The landowner accepts the award of $448 for improvements (fencing and a concrete driveway) taken as sufficient, but he points out in brief that, additionally, his expert testified to a loss of $100 for a cattle guard on the property taken (Tr. 201), and that the Department's appraiser admitted that he had not taken this loss into consideration (Tr. 148). The award should therefore be increased by an additional amount of $100 to compensate the landowner for the value of this additional improvement taken through the expropriation.
For the foregoing reasons, the judgment of the trial court is amended so as to award the defendant landowner an additional $100 for the cattle guard, together with legal interest thereon from April 30, 1964, the date of the expropriation, until paid; as thus amended, the trial court judgment is affirmed in all other respects. The plaintiff-appellee Department is to pay the costs of this appeal.
Amended and affirmed.
NOTES
[1] By that method, the front ¼ of the property is valued at 40% of the total, the second ¼ is valued at 30% of the total, the third ¼ is valued at 20% of the total, and the rear ¼ is valued at 10% of the total.