189 So.2d 292 (1966)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Paul G. MORESI, Defendant-Appellee.
No. 1760.
Court of Appeal of Louisiana, Third Circuit.
August 3, 1966.
*293 D. Ross Banister, Glenn S. Darsey, Brunswig Sholars, Ben C. Norgress, Chester E. Martin, Robert Jones, Baton Rouge (Glenn S. Darsey, Baton Rouge, of counsel,) for plaintiff-appellant.
Broussard, Broussard, & Moresi, by Paul G. Moresi, Jr., Abbeville, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is an expropriation suit arising from a "quick-taking" for highway purposes under LSA-R.S. 48.441 et seq. The plaintiff Department appeals the trial court award as excessive. The defendant landowner answers the appeal to request an increase in the award and in the expert fees assessed as costs.
1. The Subject Property: Before and After the Taking.
The virtually undisputed evidence of both the Department's and the landowner's experts shows:
The landowner Moresi's property is situated in a residential neighborhood of large homes in the City of Abbeville. It is in general conceded that the Moresi residence was or is one of the finest in the community. Before the expropriation at least, it is also conceded that due to its landscaping and placement upon its lot this home as situated on its site was one of the most attractive in the town.
This large 2-story colonial-type home was situated on a corner lot. The house faced south toward Edwards Street, upon which (before the taking) the lot had a frontage of 164 feet, with a depth of 175 feet on State Street on the home's west side. Along the State Street (west) side were four large trees (3 oaks from 2-3 feet in diameter and a sycamore tree over a foot in diameter), and in the southwest quadrant of the lot was a red-oak nearly four feet (i. e., 45") in diameter.
Prior to the taking, in this vicinity State Street was a residential street two-lanes in width. The purpose of the taking was to widen this city street into a four-laned state highway for truck vehicles and other through traffic to by-pass the business district of the city. The evidence indicates that this by-pass route, which had been constructed at the time of the trial, is heavily travelled.
By the taking, the entire western portion of the Moresi home-site was taken. On the slice of the lot expropriated were all four large shade trees on the west side, with the excavation from the taking extending right up to the trunk of the large oak in the southwestern corner, which soon thereafter blew down in a storm. The slice expropriated included 51 feet of the Edwards Street front of the property (almost a third of the frontage width) as well as the entire 175' west frontage along State Street, with the taken strip tapering down to 11½ feet at its (north) rear.
2. The Trial Court Award.
The trial court awarded the landowner $1,105.30 for the land taken (valued at 35 cents per square foot, the average square-foot value of the lot) plus $5,000 for the four large shade trees on the lot insofar as their loss occasioned a reduction in the market value of the landowner's tract. In addition, the landowner received $2,000 as damages to his premises because of the destruction consequential to the taking, of the remaining 4-foot-diameter red-oak adjacent to the highway right of way.
We do not find the aggregate award made by the trial court to be excessive, and we find its factual conclusion justified that the red-oak's death was due to injuries received *294 as a result of highway excavations following the expropriation. However, we need not discuss the Department's contentions in detail, since we have concluded that the defendant landowner is entitled to an increase in the amount of the award for additional severance damages.
3. Severance Damages.
By answer to the appeal, the landowner requests both an additional award for severance damages and also an allowance as costs of the fees of the expert appraisers who testified for him.
In disallowing severance damages, the trial court states that it, "being well aware of the property in question by reason of driving by it at least twice daily, is of the opinion that the remainder of the property was not damaged by the taking, and will not award severance damages."
Our trial brother fell into error of law in thus basing his decision upon his personal opinion as to the effect of the taking upon the market value of the remainder rather than upon the preponderance of the expert testimony in the record. See: Pennington v. Campanella, La.App. 1 Cir., 180 So.2d 882, 887 (syllabus 9); Hudson v. Arceneaux, La.App. 3 Cir., 169 So.2d 731 (syllabus 3; dicta); Miranne v. State Farm Mut. Auto. Ins. Co., La.App. Orl., 54 So.2d 538; 31 C.J.S. Evidence § 11.
With regard to the severance damages (the loss in market value of the remainder of the lot computed as of the time of trial), we think that the preponderance of the expert evidence in the record indicates that this fine, indeed elegant, residence sustained a very substantial loss in value because of the taking.
All of the five large shade trees on its south and west were taken or destroyed. As a result of the taking, the large front yard's street frontage is narrowed about a third. The street right-of-way, which had formerly been 15 feet from the rear of the carport, is now just 4½ feet from it, the 24' carport being attached to the west side of the home on which the living room (downstairs) and master bedroom (upstairs) is located. The roadway itself, formerly for a two-laned residential city street, is now just 11 feet from the carport; only seven feet nearer, perhaps, but now designed for a four-lane commercial by-pass route for heavy truck and other traffic.
The two expert realtors testified to a loss in market value of from one-fourth to one-third through the destruction of the best features of the lot for this large home and through its now-near proximity to the commercial highway, no longer screened from the street by its fine shade trees.
The State's experts did not substantially deny that some severance damage was sustained, although of course they denied it was as great as that to which the landowner's appraisers testified. One of the State's appraisers (Chappuis) admitted to a loss in market value through damage to its esthetic value, although he felt this loss could be compensated by $1,500. Another (Sullivan) likewise admitted that the loss of shade trees and the now-proximity caused severance damages (Tr. 280), but felt these were offset by special benefits (which no other appraiser found had accrued). A third (the real estate firm of Gooch and La Porte) felt that the property had sustained no severance damage by the taking; but admitted that in another expropriation at the same time for the same highway substantial "proximity" severance damages had been allowed for another colonial home just a half-block away because the highway would be brought within 7-10 feet of the side of this other house where its sleeping quarters were located (as likewise was Moresi's master bedroom).
In our opinion, the record as a whole and the preponderance of the expert testimony show that the Moresi home sustained in all a 25 per cent loss in market value through the taking, including through *295 the loss of the valuable corner and side frontage, the loss of all the shade trees, the narrowing of the lot, and the proximity damage caused by the more heavily travelled highway now being so close to the structure of the home. See: City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 ($60,000 colonial home held to be depreciated 25 per cent in value by sidestreet placed just 23 feet from house); State Through Dept. of Highways v. Lancon, La.App. 3 Cir., 174 So.2d 257 (12 per cent loss in value from widening of rural highway so now right of way just 15 feet from home); State Through Dept. of Highways v. Leger, La.App. 3 Cir., 170 So. 2d 399 (15 per cent loss in value for rural residence just 5-8 feet away from widened highway right of way, being cost of moving residence back, but 75 per cent proximity damage allowed for such loss in value of commercial building).
4. Market Value of Moresi Home-site: Before and After the Taking: Computation of the Award.
The preponderance of the evidence indicates that, just before the taking, the value of the Moresi lot exclusive of improvements was $8,000: Based upon the market data approach, the landowner's appraisers arrived at this figure; based upon a similar approach, the Department's appraisers arrived at a figure of 30 cents per square foot, or $7,000; the trial court itself, adjusting the comparables, arrived at a 35 cents per square foot, which is slightly in excess of $8,000.
As the value of the home, there were no comparable sales of such large houses. However, under the evidence its reproduction cost less depreciation is shown to be the most appropriate method of arriving at its value. State Through Dept. of Highways v. O'Neal, La.App. 3 Cir., 150 So.2d 608 and decisions therein cited. The uncontradicted expert evidence shows this to have been between $49,000 and $52,000, with the depreciation being offset by continuous modernizing improvements (year-round air-conditioning, etc.) and excellent upkeep. We conclude that the value of this home before the taking was $50,000.
In summary we therefore find factually that, before the taking, the market value of the Moresi lot and its improvements was $58,000. As held above, after the taking the remainder had a net market value of 25 per cent less than this amount, that is a net value of $43,500.
The landowner is therefore entitled to a total award of the difference, i. e., $14,500 in all, for the land taken together with the severance damages sustained by the remainder. See State Through Dept. of Highways v. Davis, La.App. 3 Cir., 149 So.2d 164, 171 (syllabus 7). In our opinion, this award should adequately compensate the landowner for all losses occasioned him by the taking, including the damaging and destruction of the large oak tree on the lot's remainder adjacent to the highway right of way.
Since the trial court awarded the landowner only $8,153.30, the trial award must be amended to include an additional $6,346.70 severance damages for a total award of $14,500.
5. Costs.
By answer to the appeal, the defendant landowner has requested an amendment of the judgment to include the fees of the experts testifying for him in the expropriation proceedings. In brief, the landowner suggests that the trial court awarded witness fees based only upon the time spent in court by the experts and that these proceedings should be remanded so as to allow evidence as to the amount charged by these experts for their pre-trial work and research preparatory to their testifying.
No evidence was introduced at the trial as to the fees, including preparatory work, charged by these experts, nor of their reasonableness. The record nevertheless demonstrates that they spent considerable pretrial preparatory time before testifying.
*296 Such expert's fees are an item of costs and not of damages. State Through Dept. of Highways v. Jones, 243 La. 719, 146 So.2d 414. The reasonable expert fees fixed should include preparatory time as well as the appearance at the trial. Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198; State Through Dept. of Highways v. Salemi, La.App. 1 Cir., 185 So.2d 536. See also State Through Dept. of Highways v. Babineaux, La.App. 3 Cir., 189 So.2d 450 (decided August 3, 1966).
Often, for convenience and to avoid unnecessary repetition in court appearances, the amount and reasonableness of the expert's fee is determined by their testimony at the time they testify on the merits. However, as provided by LSA-C.C.P. Art. 1920, costs "may be taxed by a rule to show cause" incidental and subsequent to the original proceedings. See Succession of Franz, 242 La. 875, 139 So.2d 216 and (related case) 236 La. 781, 109 So.2d 92; also, Foster v. Stewart, La.App. 1 Cir., 161 So.2d 334. In fact, in the jurisprudence prior to the enactment of the 1960 Code of Civil Procedure, there are expressions that in ordinary civil suits expert fees and other costs should be fixed by the subsequent rule to show cause rather than by the judgment on the merits. Daly v. Abramson, La.App. 2 Cir., 117 So.2d 772, 781 (syllabus 11); Randazzo v. Lucas, La. App.Orl., 106 So.2d 490, 496-97 (syllabus 11).
Under all the circumstances, we think the interests of fairness will be served in the respect of court costs incurred by the landowner if we set aside the fixing of the expert fees by the trial court, in contemplation that same will be fixed by a rule to show cause if not agreed upon by the parties.
Decree.
For the foregoing reasons, the judgment of the trial court is amended so as to award the defendant landowner the additional amount of Six Thousand Three Hundred Forty-Six and 70/100 ($6,346.70) Dollars severance damages, together with legal interest in accordance with law. The appellant Department is assessed with all costs of these proceedings, with the expert fees to be assessed for the landowner's expert witnesses to be fixed by rule to show cause as provided by LSA-C.C.P. Art. 1920.
Amended and affirmed.