MILLER, Judge.
This is an expropriation suit by the Louisiana Department of Highways, plaintiff, for the taking of a strip of land off an improved residential lot in the City of Abbeville owned by Lottie Lucia Miller, defendant. The trial court awarded defendant $17,956.00 and plaintiff appeals to this court.
The purpose of the taking was for widening and construction of a four lane highway over North State Street in Abbe-ville, Louisiana, which street was formerly a two lane black top residential street.
At the time of the taking, defendant owned an improved residential lot measuring 139.78 feet fronting south on West Oak Street, by a depth along North State Street (the eastern boundary) of 135.6 feet, the western boundary depth is 133.82 feet, and the rear width is 157.19 feet, a total land area of 19,909 square feet. Improvements consisted of a two story colonial type frame residence, built in 1944 and modernized in 1953, a garage, utility room, covered walkway and driveway. The lot had large trees and shrubbery and was well landscaped. Central air conditioning, a brick patio and garage improvements have been added since the taking.
The expropriation took place on April 2, 1962. Prior to the taking, North State Street was a residential street with an 18 ft. wide black top slab. The eastern most portion of the defendant’s residence (a breakfast room) was located about 17 feet from the right of way of North State Street, which in effect, would place it at a substantially greater distance than 17 feet from the traveled black top portion of the street. The residence and lot were screened from North State Street by large oak trees located in the northeast and southeast corners of the lot, as well as ornamental and attractive shrubbery, such as azalea bushes, and trees such as red bud, dogwood and a magnolia. Plaintiff conceded that the taking swallowed up this extensive foliage which acted as an effective buffer zone between the street and the house.
It is also conceded that the area is subject to considerably heavier traffic than prior to the taking, although there is likewise evidence that the traffic will diminish somewhat after completion of the Abbeville by-pass. Nevertheless it is un-controverted that there is heavier traffic now than prior to the taking.
The strip of land taken from the east side of defendant’s property measures 12.75 feet in width at the north end and flares out to 21.81 feet at the south or front end of the lot for a total area taken of 1,624 square feet. The area taken represents approximately 8% of the total lot area.
The trial court awarded defendant $17,-956.00 representing severance damages of $17,196.00 and $760.00 for the value of the land actually taken, subject to a credit of $5,833.00 previously deposited by plaintiff. In arriving at this total the trial court, for the value of the house and improvements, accepted the testimony of Mr. E. T. Min-vielle, Jr. whom the court recognizes as an expert estimator, contractor and lumber dealer. Mr. Minvielle placed a value before the taking on the residence, garage, walks and other improvements at $35,290.33, making no allowance for depreciation. The *81 trial court then accepted the testimony of Mr. Angers, witness for the defendant, as to the value of the lot which Mr. Angers had placed at $7,700.00. Thus the trial court placed a total value of $42,990.00 for the lot and improvements. The court then found that severance damages amounted to 40% of the value of the lot and improvements, again accepting Mr. Anger’s testimony on that point. The court then allowed $760.00 as the value of the strip actually taken for a total damage value of $17,956.-00. ($17,196.00 severance plus $760.00 land).
We are compelled to disagree with our learned trial brother both as to the amount of the award and the method of arriving at it.
E. T. Minvielle, Jr., who appeared on behalf of defendant, was a resident of Abbeville and a retail lumber dealer and licensed contractor. He estimated the value of the improvements in terms of what it would cost to reproduce them in April of 1962. His total estimate to rebuild the improvements was $35,290.00 which did not include depreciation for wear and tear or obsolescence nor did it include the value of the land. He testified that the replacement costs would be cheaper inasmuch as homes of today are not built in the same manner, (i. e. the walls of today do not have solid sheathing.)
Allen Angers, a resident of New Iberia, Louisiana, appeared on behalf of defendant as an expert appraiser. He estimated the market value of the property (lot and improvements) as of April 2, 1962 at $28,-750.00. Angers used cost of replacement less depreciation (10%) as the criterion. He placed a depreciation value of $20,090.00 on the residence, attached breezeway, garage, and a front porch and a value of $7,-700.00 on the lot for a total value, before the taking, of $28,750.00. He estimated the market value of the property after the taking at $17,250.00 or a difference of $11,500.00, concluding that the taking resulted in a 40% loss of market value.
Dennis Simon, a resident of Kaplan, Louisiana, appeared on behalf of defendant as an expert appraiser. His complete inspection of the property was not made until September 3, 1966 just prior to the trial. He valued the entire property before taking at $38,547.84 which included the depreciated (18%) replacement value of the improvements at $31,547.84 and the value of the lot at $7,000.00. He considered that the taking had diminished the value of the property by 35% or $13,490.74.
Eugene Norman Sullivan appeared as an appraiser for plaintiff. He gave the residence and its improvements a depreciated (20%) value of $24,215.00 and he valued the lot at $5-,800.00 for a total value of $30,-156.00 which he rounded off to $30,000.00. Initially he estimated the severance damages at $4,640.00 which taken together with the value of the strip taken which he had placed at $1,193.00, left total damages of $5,823.00. He testified at the trial that his original estimate of severance damages had changed and that he was of the opinion at the time of the trial that damages of $200.00 should be assigned to the costs of tying in the improvements of the sidewalk and driveways, which together with the value of the strip ($1,193.00) would total $1,393.00. He stated that he had changed his mind with respect to the severance damages, because after the improvements had been completed the street was a nice four lane street with a sidewalk where there were only ditches before and that he considered the street much more attractive and that this would off set any market value penalty for its being 12 or 13 feet closer to the roadway.
Maurice Chappuis, appeared on behalf of plaintiff as an expert appraiser. He valued the Miller lot at $5,975.00 and depreciated (20%) value of the residence and all improvements at $24,978.00. He gave a total property evaluation of $30,953.00 which he rounded off to $30,950.00. It was his opinion that the value of the property today is just as much as it was before the taking and consequently there are no sever- *82 anee damages. He stated that the beautification that the highway gave to the property off set any other disadvantage. Thus he placed a total loss of $610.00 on the Miller property and this being the value of the strip actually taken.
Our trial brother compared the instant case to the case of State through Department of Highways v. Moresi, 189 So.2d 292, 3rd App.1966. Indeed, the comparison is proper if not almost compelling. The Miller property is located one short block north of the Moresi property on the opposite side of the same street.
Not unlike the Miller property, the Mor-esi property had been shielded from the street by four large trees, three oaks and a sycamore. The Moresi home, like the Miller home, was a two story colonial type residence. The Moresi home and land were valued at $58,000.00 whereas the Miller evaluation is placed by this court at $30,-000.00. (Explained subsequently in this opinion). The Miller property had a frontage of approximately 140 feet, about 22 feet of which were lost by the taking. The Moresi house had a frontage of 164 feet of which 51 feet were lost by the taking. Thus it becomes readily apparent that 16% of the Miller frontage was lost in the taking whereas 31% of the Moresi frontage was lost. Prior to the taking the Miller breakfast room was located 17 feet from the right of way and after the taking approximately 5 feet. Prior to the taking the Moresi carport was approximately 15 feet from the right of way and 4(4 feet after. It is only fair to note that the proximity to the living area in the Miller case was more pronounced than in the Moresi case.
In neither the Miller nor Moresi cases were there any comparable sales of large houses of this description in the area.
In Moresi we applied the method of reproduction cost less depreciation shown to be the most appropriate, citing State Through Department of Highways v. O’Neal, 150 So.2d 608, 3rd App. We are frank to say however, that neither in Moresi nor O’Neal did we make any distinction between reproduction and replacement cost, using these terms as being synonymous. Suffice it to say that all the real estate appraisers both for defendant and plaintiff used a replacement cost less depreciation factor, but Mr. Minvielle (lumber dealer as opposed to real estate appraiser) used reproduction cost without depreciation, making a distinction between reproduction and replacement by assigning a higher value to reproduction. Mr. Minvielle testified that his estimate did not include an allowance for depreciation and it was error for our learned trial brother to accept this estimate without such a factor, disregarding the expert testimony showing the depreciation factor. The trial court cited Mr. Angers’ observation that the condition of the house was better than new but it overlooked the ■more important fact that Angers applied a 10% depreciation factor to his estimate.
We find that replacement cost less depreciation is the proper method in this case. Accepting this principle for the criterion, the estimates of the various appraisers are set out as follows: Allen Angers, defendant’s appraiser, $28,750.00; Dennis Simon, defendant’s appraiser, $38,-547.84; Eugene Norman Sullivan, plaintiff’s appraiser, $30,000.00; Maurice Chap-puis, plaintiff’s appraiser, $30,950.00. It is readily apparent that appraisers Angers, Sullivan and Chappuis arrived at similar values and accordingly we find the value of the Miller land and improvements prior to the taking to be $30,000.00.
The trial court accepted the severance damage percentage of 40% found by Mr. Angers. We believe this to be excessive. In Moresi, we adopted a severance damage per centage of 25% which is appropriate here. It is true that the Moresi living area is further removed from the roadway, but likewise it was further removed prior to the taking. Moreover, in Moresi almost twice as much frontage was taken (31% in Moresi as opposed to 16% in Miller).
*83 We find that the Miller property had a market value of $30,000.00 before the taking and $22,750.00 after the taking for a total loss of $7,500.00.
Accordingly, the trial court’s award of $17,956.00 is reduced to $7,500.00, subject to credit to the plaintiff for the amount previously deposited, and as amended is affirmed in all other respects, together with legal interest in accordance with law.
All costs are to be paid by plaintiff.
Amended and affirmed.